```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 20, 2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
OMEGA SA and SWATCH SA,                             :
                                                    :
                         Plaintiffs,                :     12 Civ. 6979 (PAC)
        - against -                                 :
                                                    :     OPINION & ORDER
375 CANAL, LLC,                                     :
JOHN DOES 1 – 50 and                                :
XYZ COMPANIES 1 – 50                                :
                         Defendants.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HONORABLE PAUL A. CROTTY, United States District Judge:

Omega SA and Swatch SA ("Plaintiffs") assert direct trademark counterfeiting, trademark infringement and false designation of origin claims pursuant to 15 U.S.C. §§ 1114, 1125 against the three "John Doe" defendants for selling counterfeit Swatch and Omega watches at a store located at 375 Canal Street: John Doe 21 ("Rahman"), John Doe 22 ("Kazijoynal"), and John Doe 23. (Counts I and II). Plaintiffs assert a contributory infringement claim against 375 Canal LLC ("375 Canal"), the owner/lessor of the property at which the counterfeit goods were purportedly sold. (Count III). Plaintiffs also allege that 375 Canal violated Section 231(2) of the New York Real Property Law by knowingly leasing its premises to be used for unlawful conduct. (Count IV).

Defendant 375 Canal moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Claims Three and Four, for failure to state a claim. The motion is DENIED.

## BACKGROUND

Plaintiffs are Swiss manufacturers of watches that bear the trademarks OMEGA and SWATCH. (Compl. ¶¶ 3, 4, 14, 20.) Defendant 375 Canal is the owner and landlord of a commercial building located 375 Canal Street at the corner of Canal Street and West Broadway

1

in lower Manhattan.  (Id. ¶ 26.)  Plaintiffs contend that Defendant has permitted its property to be used as a haven for the sale of counterfeit Omega and Swatch watches.

According to the well-pleaded allegations of the complaint, this is not the first time that 375 Canal has been charged with facilitating the distribution of counterfeit goods.  For example, on January 18, 2006, in a lawsuit that alleged that its tenants or subtenants were selling counterfeit goods, 375 Canal consented to an entry of judgment enjoining it from infringing Louis Vuitton's trademarks and copyrights and directing Defendant to hang a sign at its property warning customers that the purchase of counterfeit Louis Vuitton items was prohibited.  (Id. ¶¶ 29-31.)  Also in 2006, the City brought a public nuisance action against 375 Canal for hosting persons accused of selling counterfeit goods.  375 Canal consented to being enjoined from permitting its property to be "used or occupied" by counterfeiters.  (Id. ¶¶ 32-34.)  The City brought a second action in 2009.  (Id. ¶¶ 35-36.)  The parties' Stipulation of Settlement was similar to the first, with the supplement that 375 Canal was required to "dismantle and remove all hidden storage facilities / structures inside the Premises to allow open access to all areas within the storefront," an increased fine of $10,000, and the directive to post signs informing customers that they were prohibited from buying counterfeit goods.  (Id. ¶ 36; Paul Dec. Ex. 3 ¶ 12.)

Concerning Plaintiffs' goods, on two occasions, once on December 7, 2010 and again on February 10, 2011, undercover officers from the New York Police Department seized Omega and Swatch-marked watches from John Doe 21 a/k/a "Rahman" and John Doe 22 a/k/a "Kazijoynal," respectively.  (Id. ¶¶ 37, 40.)  They were selling the watches from 375 Canal's ground floor.  (Id.)  An inspection of the watches revealed that Plaintiffs did not manufacture them.  (Id. ¶ 38.)  The John Does were charged with Trademark Counterfeiting in the Third Degree.  (Id. ¶¶ 37, 40.)

On September 28, 2011, representatives of the Plaintiffs sent a letter to 375 Canal notifying it that NYPD arrested certain individuals for selling OMEGA and SWATCH branded watches at the 375 Canal Street storefront.  (Id. ¶ 44.)  375 Canal responded by email acknowledging that its "tenant sublet the space to an entity that was selling [the] counterfeit goods" and informing Plaintiffs that the "offending tenant" (subtenant) had been removed.  (Id. ¶ 47; Delfin Dec. Ex. B.)  Notwithstanding this assurance, on May 19, 2012, Plaintiffs' investigators bought a counterfeit Omega-branded watch from John Doe 23, who was standing inside the store.  (Id. ¶ 49.)  The seller had retrieved the watch from storage room located in the back of the store.  (Id.)

## ANALYSIS

   I. Motion to Dismiss Standard

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint" and construe the complaint in the light most favorable to the plaintiff.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007) (internal quotation marks omitted).  The Court only "assess[es] the legal feasibility of the complaint"; it does not "assay the weight of the evidence which might be offered in support thereof."  Lopez v. Jet Blue Airways, 662 F.3d 593, 596 (2d Cir. 2011) (internal quotation marks omitted).  To state a facially plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"

II. Contributory Infringement

A. Legal Standard

Defendants may be contributorily liable for the direct infringement of others: (1) if the defendant "intentionally induces another to infringe a trademark," or (2) if the defendant "continues to supply its service to one whom it knows or has reason to know is engaging in trademark infringement." Tiffany (NJ) Inc. v. eBay, Inc., 600 F.3d 93, 106 (2d Cir. 2010) (quoting Inwood Labs, Inc. v. Ives Labs Inc., 456 U.S. 844, 854 (1982)). Plaintiffs do not allege that 375 Canal has intentionally induced infringement. Instead, they allege that 375 Canal has contributorily infringed by continuing to supply services to a known infringer. Courts have held that the doctrine of contributory liability applies with equal force to landlords.[1] E.g., Hard Rock Café Licensing Corp. v. Concession Servs., Inc., 955 F.2d 1143, 1149 (7th Cir. 1992) (owner/operator of a flea market whose vendors were alleged to have sold infringing t-shirts); Ralph Lauren Corp. v. Chinatown Gift Shop, 855 F. Supp. 648, 650 (S.D.N.Y. 1994) (lessor of premises to retailers selling counterfeit goods in New York City's Chinatown area). Defendant 375 Canal does not object to the applicability of this theory of landlord liability and so the Court assumes that landlords can be contributorily liable.

There is a limiting principle, however, with regard to contributory liability in the context of service providers: the "extent of control exercised by the defendant [service provider] over the third party's means of infringement." E.g., Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R., 2010 U.S. Dist. LEXIS 130681, at *9-10 (S.D.N.Y. Dec. 6, 2010) (quoting Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980 (9th Cir. 1999)); see also, Gucci Am, Inc. v. Frontline Processing Corp., 721 F. Supp. 2d 228, 248 (S.D.N.Y. 2010) ("Gucci can proceed . . . if it can show that [Defendants] knowingly supplied services to websites and had sufficient

---

[1] In Tiffany, the Second Circuit assumed without deciding that service providers can be contributorily responsible.

control over infringing activity to merit liability."); Tiffany (NJ) Inc. v. eBay, Inc., 576 F. Supp. 463, 505 (S.D.N.Y. 2008).

To satisfy the knowledge requirement, "a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." Tiffany (NJ) Inc., 600 F.3d at 107. Applying this standard in Tiffany, the Second Circuit held insufficient e-Bay's general knowledge that counterfeit Tiffany products were listed and sold on its website. Id. at 110.

B. Application

With regard to Plaintiffs' theory of contributory liability, that 375 Canal "continues to supply its [premises] to one whom it knows or has reason to know is engaging in trademark infringement," the Court concludes that Plaintiffs have pled facts sufficient to plausibly establish that 375 Canal knew or at least had reason to know that it was renting its premises to be used to sell counterfeit goods.

Plaintiffs have adequately alleged "direct control and monitoring of the instrumentality" used by a third party for infringement. H.E.R., 2010 U.S. Dist. LEXIS, at *9-10. After the City's second nuisance suit, 375 Canal agreed to dismantle the backrooms and "hidden storage facilities/structures [i]nside the [p]remises to allow open access to all areas without the storefront." (Compl. ¶ 36; Paul Dec. Ex. 3 ¶ 8.) Notwithstanding this undertaking by 375 Canal, Plaintiffs' investigators purchased an Omega-branded watch from someone who retrieved it from a stockroom that 375 Canal agreed to dismantle. 375 Canal's settlements with the City plainly required it (and thus authorized it) to supervise and control operations at the property. The 2006 stipulation provided that the property "shall be enjoined from being used or occupied as a

nuisance by . . . permitting the sale and/or possession of trademark counterfeit merchandise . . . within the subject premises." (Paul Dec. Ex. 2 ¶ 2.) 375 Canal was also required to consent to unannounced, warrantless inspections by Police to assess their compliance. (Id. at ¶ 4) The 2009 injunction similarly required 375 Canal to control its tenants—375 Canal agreed that "any future tenant(s) and/or sub-tenant(s) of the Premises [would be] permanently and perpetually enjoined from utilizing . . . the Premises . . . [to] sell[ ], facilitate[e] the sale [of] or possess[ ] trademark counterfeit merchandise . . . ." (Paul Dec. Ex. 3 ¶ 6.) Any leases with tenants and/or subtenants would have to permit enforcement of the injunction. (Id.) As owner, 375 Canal can control the configuration of the shop, can screen the retailers that it allowed to occupy its premises, or otherwise physically examine the premises. The injunctions and 375 Canal's ownership rights, as alleged in the Complaint, are sufficient to support the conclusion that Defendant controlled the means of infringement.

With respect to the knowledge element, the Complaint alleges that since 2006, "375 Canal has had actual, specific knowledge that tenants or subtenants at the Property have been using the Property's ground level store(s) as a base of operation from which to sell counterfeit trademarked goods." (Compl. ¶ 28.) This allegation is supported by sufficient factual allegations so that knowledge may be inferred. The relevant knowledge or constructive knowledge relates to infringement of Plaintiffs' marked goods (the watches) by particular direct infringers (the John Does). See Tiffany, 600 F.3d at 107. Prior litigation, which involved a private plaintiff as well as two nuisance actions by the city, should have added substance to Plaintiffs' notice dated September 28, 2011 about Plaintiffs' specific products. The notice informed 375 Canal that certain individuals were arrested at their property for selling counterfeit Omega and Swatch watches on December 7, 2010 and February 10, 2011. By then, 375 Canal should have known,

or at least strongly suspected, that the current tenant or subtenant was allowing individuals to stand in their store while selling counterfeit Swatch and Omega watches.

375 Canal attempts to make much of the absence of allegations that 375 Canal "had notice of prior infringement by the same individual"—that is, the same John Doe. 375 Canal's argument is that specific notice of counterfeit sales by an identified individual is required before it can be cast into liability. That is not the law. While Tiffany required notice of specific "listings" or "sellers," that was in the factual context of an internet auction service, where that information would be useful to eBay in identifying and reducing instances of infringement. 600 F.3d at 107, 109. At any given time, eBay had over 100 million listings with a high turnover rate of more than six million new listings daily. Id. at 97. Aside from specific notices of claimed infringement ("NOCIs") that were not at issue,[2] Tiffany's research gave eBay "generalized notice that some portion of . . . goods sold . . . might be counterfeit." 600 F.3d at 97-98, 106-07. The district court noted, however, that there were also a substantial number of authentic Tiffany goods for sale on eBay. Id. at 98. Armed with this general knowledge, there was little that eBay could do to distinguish between genuine and infringing products. The situation here is much different. The complaint does not allege that the retailer at the property sold authentic Swatch and Omega watches or that there were so many sellers that the names and identities of the John Does would be essential to identifying the counterfeit goods. Notice as to the sale of a particular type of good, by an (unnamed) individual, at a specific location is comparable to the "listings" required in Tiffany.

375 Canal's contention that they did not "continue" to make their property available for infringement after receiving notice is not dispositive at the pleading stage. A few months after

---

[2] eBay's policy was to remove a listed item described in a NOCI within twenty-four hours, but in practice deleted most of them within twelve hours of receiving notice. eBay never refused to remove a reported listing. On these facts, the Second Circuit concluded that no liability attached for these listings. 600 F.3d at 99, 106.

7

375 Canal received notice of counterfeit Swatch and Omega watches at the 375 Canal Street storefront, Plaintiffs' investigators allegedly purchased yet another Omega watch at the same location.  After receiving notice, rather than remove the tenant, investigate or take other measures to minimize the sale of counterfeit watches, 375 Canal's only action was to report to the Plaintiffs that the subtenant had been removed.  Based on 375 Canal's minimal response and the continued sale of Omega's counterfeit goods, the Court cannot conclude as a matter of law that 375 Canal did not "continue" to supply its premises "knowing that the recipient is using the [premises] to engage in trademark infringement."  Inwood, 456 U.S. at 854-55.  In any event, 375 Canal's argument is contradicted by the facts of the well-pleaded complaint, and accordingly does not warrant dismissal.

   III. New York Real Property Law Section 231(2)

    "The owner of real property, knowingly leasing or giving possession of the same to be used or occupied, wholly or partly, for any unlawful . . . business, or knowingly permitting the same to be so used, is liable [jointly and] severally . . . for any damage resulting from such unlawful use, occupancy, trade, manufacture or business."  N.Y. Real Prop. L. § 231(2).  Section 231(2) is applicable to premises used for the sale and storage of counterfeit goods.  See 1165 Broadway Corp. v. Dayana of N.Y. Sportswear, Inc., 633 N.Y.S.2d 724, 726 (1995) (construing the virtually identical language in section 231(1) prohibiting use of the premises for any "illegal trade, manufacture or other business"); Winter, McKinney's Practice Commentary, Real Property § 231 (2006).  While the statute requires that the lessor know of the unlawful activity, Alonso v. Branchinelli, 277 A.D.2d 408, 409 (N.Y. App. Div. 2d Dep't 2000), Plaintiffs have pled sufficient facts to raise a plausible inference that 375 Canal did know.  375 Canal denies knowing, but at the pleading stage, the simple denial is insufficient to support the motion to

dismiss. Accordingly, with respect to this claim as well, Defendant's motion to dismiss is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED. The Clerk of Court is directed to terminate the motion at Dkt. No. 14. The defendant shall answer the complaint. The parties are directed to confer and submit a civil case management plan to the Court by June 7, 2013.

Dated: New York, New York
       May 20, 2013

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge