UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

OMEGA SA and SWATCH SA,

                *Plaintiffs*,

-*against*-

375 CANAL, LLC,
JOHN DOES 1 – 50 and
XYZ COMPANIES 1 – 50

                *Defendants.*

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-22-16

12 Civ. 6979 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendant 375 Canal, LLC ("375 Canal") moves for summary judgment dismissing Counts III and IV of Plaintiffs' Complaint. Count III alleges contributory trademark infringement against Defendant 375 Canal, the owner and landlord of the property from which the infringing products were sold. Count IV asserts that 374 Canal violated New York Real Property Law Section 231(2) by knowingly permitting its leased property to be used for an unlawful conduct.[1]

Previously, the Court denied 375 Canal's Fed. R. Civ. P. 12(b)(6) motion to dismiss Counts III and IV. Omega SA v. 375 Canal, LLC, No. 12-CV-6979 (PAC), 2013 WL 2156043 (S.D.N.Y. May 20, 2013) (the "May 2013 Order"). Plaintiffs' motion for summary judgment is now moot because 375 Canal has withdrawn its Third (statute of limitations), Fourth (as to laches), Eighth (litigation privilege) and Ninth (failure to join indispensable parties) Affirmative

---

[1] Omega SA and Swatch SA (together, "Plaintiffs") assert direct trademark counterfeiting, trademark infringement and false designation of origin claims pursuant to 15 U.S.C. §§ 1114, 1125 against three "John Doe" defendants for selling counterfeit watches that bear the registered trademarks OMEGA and SWATCH at a store located at 375 Canal Street: John Doe 21 (a/k/a "Rahman"), John Doe 22 (a/k/a "Kazijoynal"), and John Doe 23. (Counts I and II).

1

Defenses. *See* Dkt. 70 at 15. The Court assumes familiarity with the facts and law set forth in the May 2013 Order.

The May 2013 Order found that the factual allegations in Counts III and IV were sufficient to support plausible claims of contributory trademark infringement; and of violation of New York Real Property Law Section 231(2). Now, after discovery has concluded, 375 Canal renews its motion with respect to Counts III and IV. 375 Canal argues that Plaintiffs have provided no further facts demonstrating that 375 Canal (1) possessed the requisite knowledge of trademark infringing activity, yet continued to supply its premises to known infringers, so as to be contributorily liable; and (2) did not take sufficiently reasonable remedial steps to stop the infringing conduct on the premises. *See* Omega SA, 2013 WL 2156043, at *1–2. 375 Canal neither rebuts nor explains the existence of the facts alleged in the pleadings: that it was a defendant in three lawsuits from 2006 to 2009 involving the sale of counterfeit goods; received written notice from Plaintiffs on September 28, 2011 that the New York Police Department (NYPD) arrested individuals for selling counterfeit OMEGA and SWATCH watches and seized said watches at the premises in December 2010 and February 2011; received correspondence from 2004 to 2011 listing multiple evidential purchases made at the premises of counterfeit goods infringing on other trademarks; and that Plaintiffs' investigator purchased a counterfeit OMEGA watch on May 19, 2012. These unchallenged facts raise genuine questions as to whether 375 Canal had the requisite knowledge of trademark infringement or took sufficient remedial steps. Since these are factual questions, the Court must DENY 375 Canal's motion for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "resolve[s] all ambiguities and draw[s] all reasonable inferences in the light most favorable to the nonmoving party." Summa v. Hofstra Univ., 708 F.3d 115, 123 (2d Cir. 2013). Summary judgment is warranted where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Smith v. Cnty. of Suffolk, 776 F.3d 114, 121 (2d Cir. 2015) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). On a motion for summary judgment, "[i]t is the movant's burden to show that no genuine factual dispute exists." Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)).

## DISCUSSION

375 Canal argues that there is no evidence that it continued to rent to anyone it knew was engaging in trademark infringement, so Plaintiffs' contributory trademark infringement claim fails. 375 Canal also argues that there is no evidence that it knowingly rented or permitted its property to be used for an unlawful purpose, and thus Plaintiffs' New York Real Property Law Section 231(2) claim must fail.

### I. Contributory Infringement

A defendant that "intentionally induces another to infringe a trademark" or "continues to supply its [service] to one whom it knows or has reason to know is engaging in trademark infringement" may be contributorily liable for trademark infringement. Tiffany (NJ) Inc. v. eBay, Inc., 600 F.3d 93, 106 (2d Cir. 2010) (quoting Inwood Labs, Inc. v. Ives Labs, Inc., 456 U.S. 844, 854 (1982)). Plaintiffs allege that 375 Canal has contributorily infringed by continuing

3


to supply services to a known infringer. Dkt. 1 at ¶¶ 67–75.

Contributory infringement depends on a factual analysis of four areas: whether 375 Canal (1) had sufficient control over the instrumentality used to infringe; (2) possessed the requisite knowledge of trademark infringement activity; (3) continued to supply its service despite said knowledge; and (4) took sufficiently remedial steps to stop the infringing activity. *See* Tiffany, 600 F.3d at 100, 105–08; Polo Ralph Lauren Corp. v. Chinatown Gift Shop, No. 93-CV-6783 (TPG), 1996 WL 67700, at *1 (S.D.N.Y. Feb. 16, 1996). 375 Canal does not challenge the applicability of the doctrine to landlords, and the Court assumes that landlords may be contributorily liable. *See* Omega SA, 2013 WL 2156043, at *2.

A. Extent of Control as a Limiting Principle

Contributory liability is extended to service providers, however, only when they possess "sufficient control over the means of the infringing conduct." Tiffany, 600 F.3d at 105. 375 Canal has not addressed this factor, nor provided any rebutting evidence. A rational juror, however, could find on the facts as they exist here, that there was sufficient control to impose contributory liability.[2] *See* Omega SA, 2013 WL 2156043, at *3.

B. The Knowledge Requirement

For contributory liability to attach, a service provider must "continue[] to supply its [service] to one whom it knows or has reason to know is engaging in trademark infringement." Inwood, 456 U.S. at 854. The provider "must have more than a general knowledge or reason to

---

[2] 375 Canal signed two stipulations to settle the City of New York's public nuisance actions which demonstrate its control. *See* Omega SA, 2013 WL 2156043, at *3 ("As owner, 375 Canal can control the configuration of the shop, can screen the retailers that it allowed to occupy its premises, or otherwise physically examine the premises."). 375 agreed to enjoin the premises "from . . . permitting the sale and/or possession of trademark counterfeit merchandise;" allow the NYPD "to make unannounced warrantless inspections;" use lease terms specifying that a violation of the injunction would "result in immediate closure;" "dismantle and remove all hidden storage facilities/structures;" and post signs warning that sale and/or possession of counterfeit goods could result in arrest. Dkt. 69, Ex. 22 at ¶¶ 2, 4; Dkt. 69, Ex. 23 at ¶¶ 6, 8, 12.

know that its service is being used to sell counterfeit goods. Some contemporary knowledge of [the particular infringing items] is necessary." Tiffany, 600 F.3d at 107; *see* Nomination, 2010 WL 4968072, at *5–6 (requiring awareness of "specific instances of infringement"). 375 Canal renews its argument that it cannot be liable because Tiffany requires knowledge of specific, identified infringers. *See* Dkt. 54 at ¶ 2; Dkt. 53 at 9. But the Court has already rejected this interpretation of Tiffany and does so again now. *See* Omega SA, 2013 WL 2156043, at *4 ("Notice as to the sale of a particular type of good, by an (unnamed) individual, at a specific location is comparable to the 'listings' required in Tiffany."). Trademark owner's warning letters or law enforcement raids of the premises may give a service provider sufficient knowledge of specific infringements. *See* Slep-Tone, 2016 WL 3360522, at *4; Nomination, 2010 WL 4968072, at *6; Coach, Inc. v. Goodfellow, 717 F.3d 498, 504 (6th Cir. 2013).

The May 2013 Order found that the pleadings' factual allegations were sufficient to create an inference of 375 Canal's knowledge.[3] *See* Omega SA, 2013 WL 2156043, at *4. 375 Canal does not provide any evidentiary rebuttal, but nonetheless asks the Court to reverse its determination. Indeed, the record contains even further support: the September 28, 2011 letter; the private litigation complaint and subsequent permanent injunction; and correspondence sent to 375 Canal from 2004 to 2011 by another law firm informing 375 Canal of multiple sales and evidential purchases of counterfeit merchandise infringing on other trademarks. Dkt. 69, Exs. 16, 17, 18; Dkt. 63, Ex. 1. A reasonable juror could certainly infer knowledge based on these facts.

---

[3] 375 Canal was previously a defendant in three lawsuits involving the sale of counterfeit goods – one private and two public nuisance actions – and received written notice from Plaintiffs on September 28, 2011 that the NYPD had arrested individuals for selling counterfeit OMEGA and SWATCH watches at the premises in December 2010 and February 2011. Omega SA, 2013 WL 2156043, at *4. The record included the two public nuisance stipulations of settlement. Dkt. 19, Exs. 2, 3.

### C. Continued Supply of Service

Plaintiffs allege that 375 Canal continued to supply its premises to known infringers after receiving the September 28, 2011 notice, which is supported by the fact that Plaintiffs' investigator purchased a counterfeit OMEGA watch from a store clerk at the premises on May 19, 2012. Dkt. 62 at ¶ 15. Despite this purchase, 375 Canal asserts that its October 3, 2011 email informing Plaintiffs that the infringing tenant had been removed, together with its removal of one infringing tenant in December 2010, is sufficient for the Court to determine as a matter of law that no question of fact exists regarding continued supply. *See* Dkt. 53 at 11–13. 375 Canal further argues that because Plaintiffs have "failed to identify a single repeat seller," no factual dispute exists. Dkt. 70 at 10. But this "repeat seller" argument is irrelevant. *See* Omega SA, 2013 WL 2156043, at *4. 375 Canal's argument fails as a rational juror could find that 375 Canal continued to lease its premises, knowing that the recipient was using the premises to engage in trademark infringement. Similarly, the fact that there were "failed buys" does not mean that 375 Canal had stopped renting to known infringers. Dkt. 53 at 11. At best, it simply presents another genuine question of material fact for jury resolution. *See* Slep-Tone, 2016 WL 3360522, at *4 (finding Defendant, a bar owner that contracted karaoke company to host events after receiving Plaintiff's warning letters informing Defendant of company's infringement, contributorily liable).

### D. Reasonable Remedial Steps

The Second Circuit has considered whether a defendant with sufficient knowledge may have an affirmative duty to remedy infringing activity. Tiffany, 600 F.3d at 107; *see also* Polo, 1996 WL 67700, at *1 (assuming that landlord had obligation "to take reasonable steps to rid the premises of the illegal activity"). Other circuits have held that a defendant with the requisite

6

Inwood knowledge must then "take reasonable action to promptly halt the practice." 1-800 Contacts, Inc. v. Lens.com, Inc., 722 F.3d 1229, 1255 (10th Cir. 2013); *accord* Coach, Inc., 717 F.3d at 505. The Court assumes that this requirement applies in some capacity here.

375 Canal claims that it is entitled to summary judgment because it took affirmative steps to stop infringing activities that "exceed those of the landlord in Polo"; it "took the next step of initiating legal action against [a tenant]."[4] Dkt. 53 at 11–13. But the remedial measures inquiry, however, must be "context-specific." Dkt. 75 at 2. The Court rejects 375 Canal's "static, bright line rule [that] a building owner can never be held contributorily liable . . . so long as the owner, upon learning of the infringing activity, takes steps to terminate the lease or sublease in question." *Id.* at 2–3. Moreover, despite these measures, which 375 Canal claims warrant summary judgment, there is some question as to their efficacy. When Plaintiffs' investigator visited the premises on May 19, 2012, "[t]here were no signs of any sort visible anywhere within or adjacent to the storefront" and a store clerk "went into and then emerged from a hidden storeroom or other hidden structure in the rear of the store carrying two counterfeit 'Omega' Seamaster watches," one of which the investigator purchased. Dkt. 62 at 5. The record clearly reflects competing narratives and unresolved issues of material fact regarding the remedial steps taken by 375 Canal. The Court cannot rule as a matter of law that these steps were sufficiently reasonable.

Accordingly, 375 Canal's motion for summary judgment dismissing Plaintiffs' contributory trademark infringement liability claim (Count III) is inappropriate and denied.

---

[4] The court in Polo granted summary judgment in favor of a landlord who, the same month during which she was notified of infringing activity, served two notices to vacate upon the infringing tenant and refused to agree to a lease renewal in two years' time. Polo, 1996 WL 67700, at *2–3. But contrary to the facts presented here, Polo cites no previous litigations nor other infringement-related conduct aside from that involving the single infringing tenant. *Id.* at *1–2. Nor does Polo cite any evidence of continued infringement on the premises following the landlord's actions and the tenant's subsequent vacation. *Id.*

7

## II. New York Real Property Law Section 231(2)

"The owner of real property, knowingly leasing or giving possession of the same to be used or occupied, wholly or partly, for any unlawful . . . business, or knowingly permitting the same to be so used, is liable [jointly and] severally . . . for any damage resulting from such unlawful use, occupancy . . . or business." N.Y. Real Prop. L. § 231(2). The law applies to premises used to sell and store counterfeit goods. 1165 Broadway Corp. v. Dayana of N.Y. Sportswear, Inc., 633 N.Y.S.2d 724, 726 (N.Y. Civ. Ct. 1995).

Plaintiffs have presented sufficient factual evidence from which a rational juror could find that 375 Canal violated N.Y. Real Prop. L. § 231(2), despite 375 Canal's argument that Plaintiffs rely on the same "speculation" as in their Complaint. Dkt. 53 at 15; *see also* Omega SA, 2013 WL 2156043, at *5. 375 Canal does not provide any evidence to the contrary. The Court thus denies 375 Canal's motion for summary judgment regarding this claim (Count IV).

## CONCLUSION

The Court DENIES 375 Canal's motion for summary judgment dismissing Counts III and IV.

The parties are directed to appear at a status conference on Thursday, January 12, 2017, at 11:00 A.M. in Courtroom 14C to set a date for trial. The Clerk is directed to terminate all open motions.

Dated: New York, New York
      December 22, 2016

SO ORDERED

PAUL A. CROTTY
United States District Judge

8