**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

OMEGA SA and SWATCH SA,

                              Plaintiffs,                Civil Action No.: 12-CV-6979 (PAC)

           -against-

375 CANAL, LLC, JOHN DOES 1-50, and
XYZ COMPANIES 1-50,

                              Defendants.

 

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT 375 CANAL, LLC'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11(c)

Avi Schick
Kiran Patel
Dentons US LLP
1221 Avenue of the Americas
New York, New York 10021
Telephone: (212) 768-6700
Fax: (212) 768-6800
avi.schick@dentons.com

*Attorneys for Defendant 375 Canal LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

    A.    Plaintiffs' Counsel Hid the Existence of Key Fact Witnesses ................................ 2

    B.    Plaintiffs' Counsel Falsely Claimed That It Represented RJA and Diogenes ........ 5

    C.    Plaintiffs' and Plaintiffs' Counsel Submitted False Declarations in Opposition to 375 Canal's Motion for Summary Judgment ........................................................... 8

        1.    Bradford Cole's Declaration ....................................................... 8

        2.    Tony Yarborough's Declaration ............................................... 11

        3.    Paul Stone-Jansen's Declaration ............................................. 11

    D.    Plaintiffs' Counsel Continued to Withhold Evidence ........................................... 13

    E.    The Court Relied Upon The False Declarations .................................................. 18

ARGUMENT .................................................................................................... 19

I.    LEGAL STANDARDS ................................................................................ 19

II.    PLAINTIFFS' COUNSEL'S CONDUCT WARRANTS SANCTIONS ......................... 20

    A.    Plaintiffs' Counsel Should Have Known That Plaintiffs' Investigators' Summary Judgment Declarations Contained False Statements of Fact ............................... 20

    B.    Plaintiffs' Counsel's Failure to Disclose That Plaintiffs' Investigators' Summary Judgment Declarations Were False Requires Sanctions ..................................... 22

    C.    The Type and Amount of Sanctions Warranted Under Rule 11 .......................... 24

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Centauri Shipping Ltd. v. W. Bulk Carriers KS*,
   528 F. Supp. 2d 197 (S.D.N.Y. 2007)..........................................................................22, 23, 24

*Eastway Const. Corp. v. City of New York*,
   762 F.2d 243 (2d Cir. 1985)................................................................................................19

*Kamen v. AT & T*,
   791 F.2d 1006 (2d Cir. 1986)..............................................................................................20

*O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*,
   No. 88 CIV. 8498 (JSM), 1992 WL 7839 (S.D.N.Y. Jan. 10, 1992)......................................21

*Oliveri v. Thompson*,
   803 F.2d 1265 (2d Cir. 1986)..............................................................................................22

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
   682 F.3d 170 (2d Cir. 2012)................................................................................................20

**RULES AND REGULATIONS**

Federal Rule of Civil Procedure
   Rule 11 ............................................................................................... *passim*
   Rule 26(a)(1)(A) ...........................................................................................2, 4

Rules of Professional Conduct
   22 NYCRR 1200, Rule 3.3(a)(1) ............................................................23

Defendant 375 Canal LLC ("375 Canal") respectfully submits this memorandum of law in support of its motion for sanctions pursuant to Fed. R. Civ. P. 11(c) against Plaintiffs Omega SA and Swatch SA and their counsel, Collen IP and Joshua Paul ("Plaintiffs' Counsel").

## PRELIMINARY STATEMENT

Two hearings and substantial correspondence have been devoted to the three false declarations prepared by Plaintiffs' Counsel and submitted by Plaintiffs in July 2016 in opposition to summary judgment.  As egregious as Plaintiffs' Counsel's behavior was in connection with those declarations, that was only one facet of their misconduct and obstruction.

Plaintiffs' Counsel has acted inappropriately throughout this action.  Plaintiffs' Counsel (1) withheld highly relevant documents requested in 2013 concerning the investigations that gave rise to this action; (2) failed to identify the witnesses whose names were sought by interrogatories served in 2013; (3) falsely claimed in November 2013 that they represented the investigation firms retained by Plaintiffs, Robert Jackson and Associates, Inc. ("RJA") and Diogenes LLC ("Diogenes"), and directed 375 Canal not to contact those firms directly, while at deposition in August 2017, the investigators denied ever retaining Plaintiffs' Counsel; (4) prepared and submitted the three false declarations; and (5) not only failed to inform the Court that the declarations were false, but took affirmative steps to prevent full disclosure of the facts.

To this day, Plaintiffs and Plaintiffs' Counsel have yet to take responsibility for their actions.  Plaintiffs' Counsel also has (1) still not disclosed how it found out that the declarations were false; (2) not disclosed when it found out that declarations were false; and (3) refused to produce the correspondence with RJA relating to the false Stone and Yarborough declarations.

1

Plaintiffs' Counsel's conduct from the outset of this litigation has been inappropriate, objectively unreasonable, and contrary to its obligations to the Court.  Rule 11 sanctions are warranted for this pattern of behavior, including the filing of the false affidavits and cover-up.

## FACTUAL BACKGROUND

### A.      Plaintiffs' Counsel Hid the Existence of Key Fact Witnesses

In their June 25, 2013 Rule 26(a)(1)(A) Initial Disclosures, as amended by their August 15, 2013 First Amended Disclosures, Plaintiffs listed only two private investigators—Bradford Cole of Diogenes and Paul Stone-Jansen ("Stone") of RJA —as persons likely to have discoverable information.  (Ex. A at 2; Ex. B, at 1).  The Initial Disclosures also identified the documents Plaintiffs would use to support their claims, which included "[d]ocuments . . . reflecting the events perceived by Plaintiffs' private investigators at 375 Canal Street on May 19, 2012." (Ex. A at 3).  Both the Initial Disclosures and First Amended Disclosures were executed by Joshua Paul.[1]

375 Canal's First Set of Interrogatories sought the identity of all of the agents that Plaintiffs retained to investigate 375 Canal or potential sales of counterfeit Omega or Swatch brand products in New York.  Plaintiffs' September 4, 2013 Objections and Responses identified Stone, Cole, and their firms.  (Ex. D at 4-5).  No other investigators were identified in Plaintiffs' Responses and Objections, which were executed by Joshua Paul.  (*Id.*).

In November 2013, 375 Canal subpoenaed both Diogenes and RJA, requesting all documents relating to 375 Canal, Omega SA and its trademarks, and Swatch SA and its trademarks, as well as all communications between Plaintiffs' Counsel and each of the two

---

[1] Plaintiffs amended their Rule 26(a)(1)(A) disclosures a second time in June 2017, at which point they identified two new witnesses—Tony Yarborough of RJA and Peter Foster of The Swatch Group (U.S.) Inc. (Ex. C).

private investigation firms.  (*See* Ex. E; Ex. F).  As detailed below, Plaintiffs' Counsel informed 375 Canal that they represent RJA and Diogenes and that 375 Canal's counsel should therefore not contact either RJA or Diogenes.  In November and December 2013, Plaintiffs' Counsel responded to the subpoenas, and produced documents from RJA and Diogenes.  (Exs. E-F). Again, both RJA's and Diogenes' Objections and Responses to 375 Canal's subpoenas were signed by Joshua Paul.

Nearly four years later, on July 27, 2017, Plaintiffs' Counsel e-mailed 375 Canal's counsel to serve Plaintiffs' Witness List for trial.  In that e-mail, after stating that the Witness List was attached, Plaintiffs' Counsel wrote, "In addition, Plaintiffs are supplementing their earlier document production," and provided a link to an online Dropbox.  (Ex. G).[2]  The Dropbox contained at least fifty documents, including among them highly relevant and previously undisclosed documents regarding attempts to purchase watches at 375 Canal Street.

These documents revealed, for the first time, the existence of three investigators, in addition to Cole, who visited 375 Canal Street on May 19, 2012 on behalf of Plaintiffs and Plaintiffs' Counsel—William and Leslie Quinonez, and Luigi Porco. (Ex. H; Ex. I).  These documents also revealed two previously undisclosed failed attempts to purchase watches at 375 Canal Street—on December 11, 2011 and April 4, 2016. (Ex. J; Ex. H).  Finally, as discussed further in Fact Section C, *infra*, this belated document production ultimately led to the revelation that all three of Plaintiffs' fact declarations in opposition to summary judgment were false.[3]

---

[2] While Plaintiffs' Counsel stated that "Plaintiffs" were supplementing their document production, the new production also included documents from RJA and Diogenes, in addition to Plaintiffs. (*See*  Ex. G).

[3] On August 9, 2017, Plaintiffs' Counsel made another supplemental production, which contained several pre-suit communications between Diogenes and Plaintiffs' Counsel regarding

There was no explanation for Plaintiffs' Counsel's late production of these documents, nor is there any justification for it.  Plaintiffs' Counsel had contemporaneous involvement in each of the investigations to which these late-produced documents relate.  With respect to Diogenes, Plaintiffs' Counsel directed that Diogenes undertake the previously undisclosed December 11, 2011 investigation of 375 Canal.  (Ex. M; Ex. H).[4]  Plaintiffs' Counsel similarly retained RJA in December 2010 to investigate buildings in the Canal Street area, including 375 Canal Street, and further directed the April 2016 investigation that Plaintiffs' Counsel did not disclose until July 2017.  (Ex. R, Yarborough Dep., 23:19-25:3, 29:4-25).

Plaintiffs' Counsel's failure to identify William Quinonez, Leslie Quinonez, and Luigi Porco in its disclosures and interrogatory responses to 375 Canal is similarly inexplicable and unjustifiable, as Plaintiffs' Counsel was also directly involved in directing the May 19, 2012 investigation. (*See* Ex. M; Ex. S).  Due to its involvement, Plaintiffs' Counsel has possessed since before this action was filed a May 21, 2012 e-mail from Cole explaining that at least three investigators and additional "support personnel" participated in the May 19, 2012 investigation. (Ex. S).  Nonetheless, Plaintiffs' Counsel never identified Leslie or William Quinonez or Luigi Porco in any iteration of their Rule 26(a)(1)(A) Disclosures, including the Second Amended Disclosures dated June 13, 2017; nor were those three identified in the Objections and Responses to 375 Canal's First Set of Interrogatories.  Plaintiffs' Counsel also did not produce

---

investigations of 375 Canal Street, including the previously undisclosed December 11, 2011 investigation. (*See, e.g.*, Ex. K; Ex. L; Ex. M).

[4] In addition, Plaintiffs' Counsel contacted Cole on September 3, 2010 to discuss investigating infringements of Plaintiffs' trademarks in the Canal Street area.  (Ex. N at DIOGENES161-62; *see also* Ex. O).  Plaintiffs' Counsel also accompanied Cole on at least one investigation in February of 2012. (Ex. P; Ex. Q).

communications from either of the Quinonezes or Porco until July 27, 2017, and at that time did

so in a manner that was calculated to obscure the discovery.

> **B.     Plaintiffs' Counsel Falsely Claimed That It Represented RJA and Diogenes.**

In addition to failing to disclose key documents until well after discovery had closed,

Plaintiffs' Counsel has also engaged in misconduct by falsely representing that it was counsel for

Diogenes and RJA, thereby obstructing 375 Canal's access to crucial third-party witnesses.

In Plaintiffs' Initial Disclosures and First Amended Disclosures, Plaintiffs' Counsel

represented that Collen IP had been retained to represent Cole and Stone "in his capacity as a

witness" in this action and that, accordingly, 375 Canal could only contact Cole or Stone through

Plaintiffs' Counsel.  (Ex. A at 2; Ex. B at 1).   After 375 Canal served its subpoena on RJA in

November 2013, Plaintiffs' Counsel wrote to inform 375 Canal's counsel that Plaintiffs' Counsel

would not only be representing Stone individually, but was purportedly representing RJA as

well:

> Robert Jackson Associates ("RJA") called me yesterday about the subpoena for
> documents and deposition testimony your office served on them.  ***My firm will be
> representing RJA; going forward, please do not communicate directly with
> anyone from that company.***  Also, as of now, I have not received any sort of
> discovery notice from your office relating to RJA.  I assume you mailed such a
> notice to us before you served RJA.

(Ex. T at 4 (emphasis added)).

Soon thereafter, Plaintiffs' Counsel stated that they also represented Diogenes.  (*Id.* at 2).

Acting as counsel, Plaintiffs' Counsel signed Diogenes' and RJA's objections and responses to

their respective subpoenas (Ex. E at 3; Ex. F at 4), and presumably directed the document

collection for both Diogenes and RJA.[5]

---

[5] Nonetheless, as discussed in Fact Section A, *supra*, Plaintiffs' Counsel did not produce crucial
documents related to the investigations of 375 Canal Street until six weeks before trial was set to

Once 375 Canal deposed RJA's and Diogenes' other investigators, however, it became clear that Plaintiffs' Counsel did not, and never had, represented Plaintiffs' investigators.  For example, at his deposition Cole testified as follows:

> Q. Mr. Cole, are you represented today by counsel?
>
> A. No.
>
> Q. Have you ever been represented by counsel in connection with this lawsuit?
>
> A. I've never retained counsel.
>
>        * * * *
>
> Q. Did you ever authorize the Collen law firm to represent others that were representing you in connection with this lawsuit?
>
> A. Not that I recall.
>
> Q. Have you ever been represented by the Collen law firm at any time? Has the Collen law firm ever represented you at any time, as far as you know?
>
> A. Not that I recall.

(Ex. U, Cole Dep. 5:17-6:18).

Yarborough similarly testified that Plaintiffs' Counsel never represented RJA:

> Q. I'm wondering if Robert Jackson and Associates was ever a client of Mr. Paul's law firm, Collen IP?
>
> A. We've never hired them, no.
>
> Q. Has Collen IP ever represented any of the individuals with whom you work at Robert Jackson and Associates?
>
> A. I'm not aware of them ever hiring them, no.

(Ex. R, Yarborough Dep. 36:6-14).

---

commence. Unless they can demonstrate otherwise, we should assume that Plaintiffs' Counsel was in possession of those key documents since at least 2013 but withheld them.

In his deposition, Stone initially testified that he was represented by Joshua Paul. However, Paul then "clarified" that Plaintiffs' Counsel was "not representing the witness and whatever . . . the witness may believe, I do not, for this deposition, represent RJA, or any of its employees." (Ex. V, Stone Dep. 6:17-21, 10:4-8).  Paul then stated on the record that Plaintiffs' Counsel had previously represented RJA in connection with the subpoena, but "terminated our relationship with them a number of weeks ago." (Ex. V, Stone Dep. 10:10-12).  However, that statement is contradicted by Yarborough's testimony that RJA was never represented by Plaintiffs' Counsel, as well as Stone's testimony that he never signed a retainer with Plaintiffs' Counsel, never made any payments to Plaintiffs' Counsel, was never informed of any potential conflicts with respect to other parties Plaintiffs' Counsel represents in the action, and was unaware of whether RJA ever made payments to Plaintiffs' Counsel. (Ex. V, Stone Dep. 8:7-10:3).[6]

Absent Plaintiffs' Counsel falsely stating that it represented Diogenes and RJA and directing 375 Canal's counsel not to contact them, 375 Canal would likely have uncovered the withheld documents, failed buy attempts and the roles of both Quinonezes and others in 2013.

---

[6] In addition, despite Plaintiffs' Counsel's statements that it represented Stone and RJA, Stone's deposition also revealed that Plaintiffs' Counsel made no efforts to inform RJA of its duty to preserve crucial documents relating to this case until this past July. Accordingly, Stone testified that any notes of his visit to Canal Street on December 15, 2010 have been lost or destroyed.  (*Id.* 23:15-20, 161:1-162:21, 208:4-7).

Peter Foster's deposition revealed similar malfeasance by either Plaintiffs, as Foster is employed by Plaintiffs' parent company, or by Plaintiffs' Counsel.  Foster testified that he had prepared notes about the issues in the case, but destroyed them the morning of his deposition while in the presence of Plaintiffs' Counsel. (Ex. W, Foster Dep. 21:3-23:12). Plaintiffs' Counsel has contended those notes were privileged or work product, but there is, of course, no way to verify that now.

### C.    Plaintiffs' and Plaintiffs' Counsel Submitted False Declarations in Opposition to 375 Canal's Motion for Summary Judgment

By its failure to produce highly relevant documents, identify witnesses and accurately state who they represented as counsel, Plaintiffs' Counsel created the environment that permitted them to prepare and submit the false declarations of Cole, Stone, and Yarborough opposing 375 Canal's June 6, 2016 motion for summary judgment without fear of detection.  (Ex. X).  Those three declarations were the only factual declarations Plaintiffs submitted in opposition to summary judgment,[7] and all three contained material, false statements.

#### 1.    Bradford Cole's Declaration

The most critical of Plaintiffs' summary judgment declarations was Cole's, which set forth in 20 detailed paragraphs his purported visits to 375 Canal Street, culminating in the May 19, 2012 purchase of an allegedly counterfeit Omega watch at 375 Canal Street.  In his declaration, Cole swore under penalty of perjury that:

- "I . . . went to the Canal Street area on December 30, 2011 . . . ."  (Ex. AA ¶ 10).

- "Although I stopped by 375 Canal that day, I did not notice any retail storefront at that location and did not try to purchase an 'Omega' watch at that location."  (*Id.*).

- "I visited the storefront at 375 Canal Street for the second and final time on May 19, 2012."  (*Id.* ¶ 12).

- "My purpose in going to Canal Street [on May 19, 2012] was to make evidentiary buys of counterfeit 'Omega' watches at 375 Canal Street and six other particular storefronts.  As I noted in my report to Collen IP . . . , I was

---

[7] Plaintiffs also submitted declarations by Joshua Paul and Lisa Caponegro of Gibney Anthony & Flaherty LLP; however, those declarations were used solely to submit documents.  (Ex. Y; Ex. Z).

able to purchase a counterfeit 'Omega' watch from six of the seven locations, including 375 Canal."  (*Id.* ¶ 13).

- "I conversed with a store clerk [on May 19, 2012], who eventually went into and then emerged from a hidden storeroom or other hidden structure in the rear of the store carrying two counterfeit 'Omega' Seamaster watches.  He offered to sell them to me.  I purchased one . . . for $80." (*Id.* ¶ 15).

At his deposition, however, Cole testified that he did not take the actions described in his declaration.  Specifically, Cole testified that he never made the December 30, 2011 visit to the Canal Street area or 375 Canal Street. (Ex. U, Cole Dep. 92:20-93:9).  Cole also conceded that he did not purchase an Omega watch at 375 Canal on May 19, 2012 and did not have the conversation with the store clerk that he described in his declaration.  (Ex. U, Cole Dep. 26:20-27:2).

Cole not only disavowed the factual assertions about 375 Canal contained in his declaration, he also disavowed any knowledge or understanding of the declaration's assertions about Canal Street and counterfeiting generally.  Thus, when asked at deposition what he meant by the statements in paragraph 6 of his declaration that "when the supply is available, there is a high likelihood that – if given the opportunity – merchants who sell goods from Canal Street storefronts will try to sell people counterfeit goods," Cole testified that he did not know what he meant because he "did not draft" the declaration.  (*Id*. 64:18-65:1).

Cole's admission that he "did not draft" the declaration is corroborated by the correspondence between Cole and Joshua Paul regarding the drafting of the declaration.  On June 17, 2016, Paul emailed Cole and informed him that "I'd like to discuss a potential new project," before then noting that he also wanted to discuss Cole's "signing an affidavit for us[.]"  (Ex. BB at 4).  Paul followed up with Cole on July 13, 2016, and explained that the draft would include facts from an NYPD raid that Cole "may have witnessed."  (*Id.*).  He continued, "If you are in a

position to include these facts in your affidavit great; if not, we'll find a work around through someone else." (*Id.*).  During the next several days, Paul sent Cole various drafts.  None of the edits appear to be based on revisions from Cole, and there is no indication that Paul and Cole spoke about the contents of the declaration during its drafting.

Each successive round of edits appears to involve Paul making additions or changes as he sees fit.  For example, on July 18, 2016, Paul sent Cole a revised draft and wrote, "You will note that, in ¶ 7, I am having you make a statement concerning your understanding of the lowest MSRP for a genuine OMEGA watch in 2010." (*Id.* at 34).  While this paragraph in the filed declaration indicates that Cole used price as a factor to help him identify counterfeit merchandise while in the field in 2010 through 2012 (and thus suggests that Cole knew the retail price for a genuine Omega watch when making those assessments in that time frame), the correspondence regarding the draft indicates that the information about the price of a genuine Omega watch was provided to Cole by Plaintiffs' Counsel in the course of drafting the declaration in July 2016.

The revisions made by Paul also shifted the tone toward a greater degree of certainty. For example, the redline attached to Paul's July 18, 2016 email eliminated the first three words in the phrase "To my recollection, I saw the police confiscate . . ." so that the final statement simply read "I saw the police confiscate . . . ." (*Id.* at 37, ¶ 9.)

Paul sent a finalized draft of the declaration to Cole at 11:39 a.m. on July 19, 2016, and asked Cole to "sign and return" a copy of the declaration.  (*Id.* at 56).  Paul did not ask Cole to review the final draft for accuracy, even though it included new material.  Cole complied— sending a signed copy at 11:48 a.m.—less than ten minutes after Paul sent his e-mail.  (*Id.*).

2.      *Tony Yarborough's Declaration*

In his summary judgment declaration, Yarborough of RJA, who has never been to 375 Canal Street as part of any investigation (Ex. R, Yarborough Dep. 20:11-22:16), referenced multiple visits to the Canal Street area by his colleagues, but made only one statement based on his own knowledge.  (Ex. CC, Yarborough Decl.).  That statement was that RJA sent an investigator to 375 Canal Street only once, on December 15, 2010.  (*Id.* ¶ 6).  At his deposition, Yarborough conceded this was false.  (Ex. R, Yarborough Dep. 27:8-13).  In fact, Yarborough admitted that RJA had sent an investigator to 375 Canal Street just three months earlier—in April 2016—to look for counterfeit Swatch products, and that investigator found no such products at 375 Canal Street.  (*Id.* 25:21-26:24).  Accordingly, when asked at deposition whether the only statement in his declaration based on personal knowledge was inaccurate, Yarborough testified:  "Yes." (*Id.* 27:8-13).

3.      *Paul Stone-Jansen's Declaration*

Plaintiffs' final fact declarant in opposing summary judgment was Stone, who was also the only one of Plaintiffs' declarants who claimed to have purchased a Swatch watch at 375 Canal Street.  He submitted a four-paragraph summary judgment declaration, in which he swore that he purchased a counterfeit Swatch watch and a counterfeit Longines watch from an employee at 375 Canal Street on December 15, 2010.  (Ex. DD ¶ 2).  His declaration further states that the details of his visit to 375 Canal Street are memorialized in an exhibit attached to the declaration.  (*Id.* ¶ 3).  However, the first page of that exhibit directly contradicts Stone's contention that he purchased a counterfeit Swatch watch from 375 Canal.  (*Id.* at PL 008892).

The first page of the exhibit summarizes the three "buys" that Stone made on December 15, 2010:  at 209 Canal Street, 375 Canal Street and 376 Canal Street.  This page states that, in

direct contradiction to paragraph 2 of Stone's declaration, the only watch he purchased at 375 Canal Street was a Longines watch, while at 376 Canal Street he purchased a Swatch watch.

Stone testified that every paragraph in his declaration (except for the paragraph giving his job title) contains information that is not true, is materially incomplete, or that he does not recall.

For example, with respect to the statement in paragraph 2 of his declaration that he visited 375 Canal Street on December 15, 2010 and purchased a counterfeit Swatch watch and a counterfeit Longines watch (which, again, is contradicted by the exhibit to his declaration), Stone testified that he has no independent recollection of this information.  (Ex. V, Stone Dep. 213:12-22).

Paragraph 3 in Stone's declaration asserts that "As I was leaving the storefront, the sales clerk motioned me back into the store.  He told me that he could sell me an 'Omega automatic' watch.  He then directed me to a group of men who were standing about 10 feet from the store entrance.  I decided that . . . I would not approach these men."  (Ex. DD, Stone Decl. ¶ 3).  At deposition, however, Stone admitted that it was not the store clerk who offered him an Omega watch but rather he (Stone) asked the store clerk whether he had an Omega automatic watch for sale.  (Ex. V, Stone Dep. 211:4-213:8).  By omitting this material fact, Stone's declaration misleadingly suggested that the clerk had initiated the interaction and offered Stone an Omega watch, when in fact it was Stone who requested an Omega watch and the clerk did not have one for sale.

Stone also testified that the final paragraph of his declaration is not accurate.  That paragraph makes the same assertion that was provided in Yarborough's declaration about December 15, 2010 being the only time an RJA investigator attempted to make such a purchase at 375 Canal Street.  (Ex. DD, Stone Decl. ¶ 4).  As noted above, this was untrue as of the time

the declaration was drafted, as RJA sent an investigator to 375 Canal Street in April 2016 and the investigator did not locate any products bearing Plaintiffs' mark.  (Ex. V, Stone Dep. 66:4-67:7).

Finally, in addition to acknowledging the substantive inaccuracies in his declaration, Stone further explained that no one spoke with him about the content of the declaration before it was drafted and provided to him for signature.  (*Id*. 37:9-38:2).[8]

### D. Plaintiffs' Counsel Continued to Withhold Evidence

Plaintiffs' Counsel has still not identified precisely when it learned of the falsity of its summary judgment declarations.  In his deposition, Cole testified that he informed Plaintiffs' lawyers some time ago that his declaration was false:

> Q. When did you realize that the affidavit you filed under oath with the court was false?
>
> * * * *
>
> A. I am not sure the exact date, but once I became aware of it -- I am just not sure of the exact date.
>
> * * * *
>
> Q. Was it in 2017?
>
> A. I believe so.
>
> Q. When in 2017?
>
> A. I don't know the exact date.
>
> Q. Did you make any efforts to inform the court that the affidavit that you filed under oath was not accurate?
>
> A. I notified Attorney Paul.

(Ex. U, Cole Dep. 27:3-21).

---

[8] Plaintiffs' Counsel has still not produced any of the communications regarding the preparation of the Yarborough or Stone declarations.  While 375 Canal cannot state definitively that the correspondence reveals misconduct by Plaintiffs' Counsel, the failure to produce the correspondence despite repeated assurances lends itself to a presumption of misconduct.

At a September 11 hearing concerning the false declarations, Plaintiffs' Counsel stated that "we learned [that the declarations were untrue] at some point in July, early August, but certainly before the August 2 conference with the Court, we began to put things together in talking about it with Mr. Cole." (Ex. EE, 9/11/17 Tr. 7:3-6) . In its September 7, 2017 letter to the Court, Plaintiffs' Counsel stated they first learned Cole's declaration was untrue "only in late July, 2017." (Ex. FF at 3). Plaintiffs' Counsel almost certainly learned of the falsity of the declarations prior to July 27, when it sent the Dropbox link to additional documents. Given Cole's testimony on August 29, 2017 that he could not remember precisely when he informed Paul but that he "believe[d]" it was sometime in 2017, it is likely that they knew far earlier.

In any event, Plaintiffs' Counsel was certainly aware of the declarations' falsity prior to July 27, 2017, which is the date that Plaintiffs' Counsel made its belated document production that revealed—if one clicked on the Dropbox link, downloaded all of the documents and reviewed all of them expeditiously—the existence of the Quinonezes, Porco, and the December 11, 2011 failed buy.

But only two days later, on Saturday, July 29, 2017, Plaintiffs' Counsel took affirmative steps to ensure that 375 Canal and the Court would not learn the truth about either what had occurred or about its conduct in this matter. On that day, Plaintiffs' Counsel wrote to counsel for 375 Canal to assert claims of work-product privilege over previously-produced communications between Plaintiffs' Counsel and Diogenes, and sought to claw-back such communications. (Ex. GG).

The timing of this belated assertion of privilege and the attempt to claw back communications between Plaintiffs' Counsel and Cole and others at Diogenes—including the May 21, 2012 e-mail from Cole to Plaintiffs' Counsel that stated that three investigators and

additional "support personnel" were used on the May 19, 2012 investigation (Ex. S at

DIOGENES000205) —is suspicious to say the least, and most easily supports the conclusion that

Plaintiffs' Counsel was seeking to obscure the true facts from the Court and 375 Canal and to

prevent discovery of the true facts and of the false declarations it had submitted.

Plaintiffs' Counsel continued on its path of obstruction and non-disclosure at the August

2, 2017 status conference.  At that conference, Plaintiffs' Counsel yet again failed to disclose to

the Court that its summary judgment declarations were false.  Here is what Mr. Paul said: "Mr.

Cole . . . had subcontracted or involved three other persons in addition to himself in a number of

events that have been reported in the summary judgment affidavit and in the discovery we

produced." (Ex. HH, 8/2/17 Tr. 9:2-15).  In this case "involved them" was apparently a

euphemism for "conducted the purchase falsely attributed to Cole in his sworn declaration."

Indeed, at the August 2 conference, Plaintiffs' Counsel opposed 375 Canal's request to

depose Leslie Quinonez, despite the fact that at that times they surely knew that Ms. Quinonez

was the person who purchased the allegedly counterfeit Omega watch at 375 Canal Street on

May 19, 2012.  Plaintiffs' Counsel specifically argued that Ms. Quinonez " is not necessary":

> So I just wanted to address the question of the second witness, Ms. Quiñones
> [*sic*]. Now, she witnessed nothing that is not captured already on tape. She was
> involved in I believe -- I'm going from memory, but I believe this was true -- in
> only one incident, which was a purchase of a counterfeit Omega watch at 375
> Canal Street on May 19, 2012. Present with her at the time were three others: Mr.
> Cole, Mr. Quiñones and a third person whom we have identified, Mr. Porko [*sic*].
> Also Ms. Quiñones recorded the entire thing on an iPad which we have produced
> and they have had; and the two other gentleman, Mr. Cole and Mr. Quiñones,
> observed the entire thing from the sidewalk and recorded it from the sidewalk. So,
> there can be no question what took place. We intend to offer into evidence clips
> from those videotapes. So, she is not necessary.

(Ex. HH, 8/2/17 Tr. 15:3-17).  In addition, Plaintiffs' initial Witness List, which was served at the same time as the July 27, 2017 document production, did not even list Ms. Quinonez as a potential witness.  (Ex. II).

Plaintiffs' Counsel continued to work to hide the facts of what occurred after the August 2 conference.  For example, Plaintiffs' Counsel initially would only agree to produce  Ms. Quinonez for deposition in New York if 375 Canal agreed not to serve her with a trial subpoena. (Ex. JJ at 1-4), and ultimately would only make her available on a Saturday, despite the fact that lead counsel for 375 Canal is unavailable on Saturdays for religious reasons.

Following Ms. Quinonez's deposition, 375 Canal deposed Cole, Stone, and Yarborough and discovered in those depositions that each of those investigator's declarations was false.  375 Canal then wrote to the Court on September 4, 2017 regarding the false declarations. (Ex. KK).

Notably, once the Court was informed of the falsity of the declarations, Plaintiffs' Counsel completely changed tack with respect to Ms. Quinonez.  Approximately one hour after 375 Canal sent its September 4, 2017, Plaintiffs' Counsel submitted a letter in which they requested leave to designate portions of Ms. Quinonez's deposition transcript for use at trial, even though they had opposed the taking of her deposition one month earlier, and had insisted that she not be subpoenaed by 375 Canal as a trial witness.  (Ex. LL).

The following day, counsel for both sides appeared before the Court for the September 5 pre-trial conference.  At that conference, after first ruling on the motions *in limine* the parties had filed, the Court turned to the false declarations.  As the Court is aware, Plaintiffs' Counsel sought to avoid responsibility, arguing that the declarations were immaterial to summary judgment.

At the conclusion of the September 5 conference, Plaintiffs' Counsel sought leave to submit a written response to 375 Canal's September 4 letter.  Plaintiffs' Counsel subsequently

submitted a September 7, 2017 letter to the Court, which attached a brand new declaration from Ms. Quinonez concerning the May 19, 2012 purchase of the allegedly counterfeit Omega watch. (Ex. MM).  This declaration includes an excerpt from a May 20, 2012 e-mail Ms. Quinonez sent to Cole following the May 19, 2012 purchase, in which Ms. Quinonez stated that she "purchased a counterfeit Omega watch" at 375 Canal Street (Ex. MM ¶ 9).   Plaintiffs' Counsel also attached that e-mail to Ms. Quinonez's declaration, and further stated that Ms. Cole's declaration is corroborated by her deposition transcript. (*Id.*).   However, as 375 Canal pointed out in its September 8, 2017 reply letter, Ms. Quinonez's deposition makes clear that she is not qualified to identify counterfeits, and that she has no personal knowledge about whether any watch she purchased was counterfeit.   (Ex. NN, L. Quinonez Dep. 54:11-55:7)

Plaintiffs' Counsel's September 7 letter again refused to take any responsibility for the drafting of false declarations or for the failure to disclose that the declarations were false once Plaintiffs' Counsel purportedly learned of their falsity.  Instead, Plaintiffs' Counsel accused 375 Canal's counsel of having "attempted to commandeer another Pretrial Conference with last-minute allegations." (Ex. FF at 10).  Apparently, Plaintiffs' Counsel is of the view that attorney misconduct does not occur when an attorney makes false submissions or fails to correct them, but rather when opposing counsel brings them to the Court's attention.

Following 375 Canal's submission of its reply letter on September 8, the Court directed that the parties appear on September 11, 2017—the day before trial was to commence—to discuss the false declarations.  At that hearing, the Court determined that the falsehoods in the declarations required revisiting summary judgment and adjourned the trial.

Finally, at the September 11 hearing, Plaintiffs' Counsel explained that they did not disclose the false declarations to the Court or 375 Canal on the basis of "a particular opinion of

17

the bar, city Bar Association, on the question of whether -- we considered whether we had an

obligation at that point to inform the Court." (Ex. EE, 9/11/17 Tr. 7:23-8:4).  Plaintiffs' Counsel

determined, after consulting this unnamed bar opinion, "that the information was not material to

the Court's decision and [was not disclosed] for that reason."  (*Id*. 8:5-8).[9]

### E.   The Court Relied Upon The False Declarations

As noted above, on September 11, 2017, a hearing was held before the Court concerning

Plaintiffs' investigators summary judgment declarations.  At that hearing, Plaintiffs' Counsel and

375 Canal's counsel addressed whether Cole, Yarborough, and Stone's declarations were

material to this Court's decision to deny summary judgment.  After hearing argument from

Plaintiffs' Counsel that Cole's declaration was not material, the Court stated that the false

statements in Cole's declaration were

> material to the issues that you [Plaintiffs' Counsel] raised, though, because when
> you prepared your memorandum of law and opposition to motion for summary
> judgment, you cited the Cole affidavit, paragraphs 3, 4, 5, 6, 14, 15, 9, 12 to 15,
> 15 and 16. I lost count. It's well in excess of a dozen. But, I mean, if you go
> through your brief, the pages 2, 3, 4, 4, 5, 6, and 7, it's cited repeatedly. I mean,
> you raised the issue. You raised the issue because in your argument you were
> making the point that there was continuity in the 375, it continued to violate your
> rights, and so it's very important to have the May sale. And you believe that, and
> that's why you cite the -- and I certainly believed it because I cited the Cole
> affidavit three times in my decision. I thought it was relevant[.]

(Ex. EE, 9/11/17 Tr. 6:3-16; *see also* Ex. PP, 9/5/17 Tr. 22:18-23:11 (Plaintiffs' Counsel's

conceding that "Cole was the sole affidavit witness" at summary judgment on whether a watch

---

[9] Plaintiffs' Counsel stated that this New York City bar opinion was reviewed "immediately
before the August 2 conference." (*Id*.).  Again, because Plaintiffs' Counsel continues to be
vague regarding when exactly it discovered the falsity of the declarations, it is unclear when this
review of the New York City bar opinion actually occurred.  A reasonable inference is that
Plaintiffs' Counsel did not even consider the issue of disclosure until after 375 Canal filed its
August 1, 2017 letter with the Court raising the issue of the July 27, 2017 document production
and the discovery of new witnesses. (Ex. OO).  In other words, Plaintiffs' Counsel only
considered disclosure to the Court upon realizing that the jig was up and that 375 Canal and the
Court were getting closer to the truth.

bearing an "Omega" mark was purchased on May 19, 2012)).  In addition, at the September 5

conference, the Court stated that "had you [Plaintiffs' Counsel] told me this, given me this

information, or had Cole and the others not submitted affidavits, which are now regarded as

perhaps false but certainly inaccurate, I wouldn't have granted the motion for summary

judgement -- I wouldn't have denied the motion for summary judgement [*sic*]."  (Ex. PP, 9/5/17

Tr. 26:4-9).

The Court canceled the jury trial set to begin the following morning, and set briefing

schedules to revisit summary judgment and for the instant Motion.

## ARGUMENT

## I.   LEGAL STANDARDS

Rule 11(b)(3) of the Federal Rules of Civil Procedure provides:

> By presenting to the court a pleading, written motion, or other paper--whether by
> signing, filing, submitting, or later advocating it--an attorney or unrepresented
> party certifies that to the best of the person's knowledge, information, and belief,
> formed after an inquiry reasonable under the circumstances . . . the factual
> contentions have evidentiary support or, if specifically so identified, will likely
> have evidentiary support after a reasonable opportunity for further investigation or
> discovery.

Rule 11 thus "explicitly and unambiguously imposes an affirmative duty on each attorney to

conduct a reasonable inquiry into the viability of a pleading before it is signed." *Eastway Const.

Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985), *superseded on other grounds by

rule*.

Rule 11 further provides that "[i]f, after notice and a reasonable opportunity to respond,

the court determines that Rule 11(b) has been violated, ***the court may impose an appropriate

sanction*** on any attorney, law firm, or party that violated the rule or is responsible for the

violation."  Fed. R. Civ. P. 11(c)(1)  (emphasis added).  "[T]he standard for triggering the award

of fees under Rule 11 is objective unreasonableness and is ***not*** based on the subjective beliefs of the person making the statement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (emphasis added; citation omitted).  When determining whether an inquiry was reasonable, courts often look to the following factors:

> [W]hat constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

*Kamen v. AT & T*, 791 F.2d 1006, 1012 (2d Cir. 1986) (emphasis omitted) (quoting Fed. R. Civ. P. 11 Advisory Committee Notes to 1983 Amendments).  The Advisory Committee Notes to the 1993 Amendments to Rule 11 further provide that an attorney's obligations with respect to the contents of papers submitted to the court "are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit."

## II.      PLAINTIFFS' COUNSEL'S CONDUCT WARRANTS SANCTIONS

Plaintiffs' Counsel's conduct in this action requires sanctions under Rule 11 for two separate reasons.  First, Plaintiffs' Counsel should have known that the declarations submitted in opposition to summary judgment contained false, material statements.  Second, Plaintiffs' Counsel failed to inform the Court or opposing counsel of the falsity of the declarations upon purportedly discovering their falsity—certainly no later than in July 2017.

### A.      Plaintiffs' Counsel Should Have Known That Plaintiffs' Investigators' Summary Judgment Declarations Contained False Statements of Fact

Plaintiffs' Counsel has represented to the Court that it was not aware of the falsity of Plaintiffs' investigators' declarations until July or early August of 2017.  (Ex. EE, 9/11/17 Tr. 7:3-6).  Regardless of whether this is true, had Plaintiffs' Counsel made a reasonable inquiry into

the facts when drafting the declarations, their falsity would have been easily revealed.  Where a party fails to conduct a "reasonable investigation into [the] veracity" of a declaration, Rule 11 sanctions are warranted.  *See O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, No. 88 CIV. 8498 (JSM), 1992 WL 7839, at *5 (S.D.N.Y. Jan. 10, 1992) (defendant ordered to pay costs resulting from the filing of a false affidavit by one of its witnesses where defendant's in-house counsel "prepared and were responsible for the false affidavit[]" and the affidavit was drafted "without conducting a reasonable investigation into its veracity").

Analyzing the relevant factors as identified by the Advisory Committee Notes to 1983 Amendments, it is clear Plaintiffs' Counsel failed to conduct an adequate investigation into the facts of the summary judgment declarations.  For example, the Advisory Committee Notes provide that one factor to analyze is "how much time for investigation was available to the signer."  Here, Plaintiffs' Counsel had ample time to investigate the factual statements made in the investigators' declarations; indeed, Plaintiffs' Counsel directed the investigations of 375 Canal Street by Diogenes.  (*See* Ex. M; Ex. S).

Another factor identified by the Advisory Committee Notes is "whether [counsel] had to rely on a client for information as to the facts underlying the pleading, motion, or other paper." Here, while Plaintiffs' Counsel did have to rely on the investigators, Plaintiffs' Counsel also possessed the May 21, 2012 e-mail from Cole to Plaintiffs' Counsel, which showed at least three investigators were involved in the May 19, 2012 investigation.  (Ex. S at DIOGENES000205).

A third factor identified by the Advisory Committee Notes is "whether [counsel] depended on forwarding counsel or another member of the bar."  Here, Plaintiffs' Counsel

drafted and filed the declarations themselves.[10]

Sanctions are also warranted here for several other reasons.  First, the documents provided by Plaintiffs' Counsel regarding the preparation of Cole's declaration indicate that Plaintiffs' Counsel never spoke to Cole regarding the contents of that declaration during the drafting period.  Second, each revision of Cole's declaration by Plaintiffs' Counsel was increasingly aggressive and expansive.[11]  Finally, Plaintiffs' Counsel's misconduct in connection with the false declarations flowed from its earlier failures to disclose in connection with its initial and amended disclosures, and its decision to withheld documents and evidence in its responses to the subpoenas and Interrogatories sent by 375 Canal to Diogenes and RJA—responses that were themselves the product of Plaintiffs' Counsel's false statements that they represented Diogenes and RJA.  Plaintiffs' Counsel's misconduct does not merely arise from a mere failure to investigate, but arose from its affirmative acts to withhold evidence.  This conduct was most certainly objectively unreasonable.  Accordingly, Rule 11 sanctions are warranted.

> **B.    Plaintiffs' Counsel's Failure to Disclose That Plaintiffs' Investigators'
> Summary Judgment Declarations Were False Requires Sanctions**

Plaintiffs' Counsel's failure to disclose the falsehood of the declarations to the Court upon its purported discovery in July 2017 also requires Rule 11 sanctions.  Attorneys appearing before the Court are bound by "the obligations of truth, candor, accuracy, and professional judgment that are expected of [him] as [an] officer[ ] of the court." *Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F. Supp. 2d 197, 201 (S.D.N.Y. 2007) (quoting *Oliveri v. Thompson,* 803

---

[10] The only other factor identified by the 1983 Advisory Committee Notes is inapplicable to these facts, as it asks "whether the pleading, motion, or other paper was based on a plausible view of the law."

[11] Because Plaintiffs' Counsel did not produce communications concerning the drafting of the Stone or Yarborough declarations, 375 Canal is unable to engage in a similar analysis of those declarations on this issue.

F.2d 1265, 1267 (2d Cir. 1986)).  The New York Rules of Professional Conduct provide that a lawyer "shall not knowingly . . . fail to correct a false statement of material fact or law previously made to [a] tribunal by the lawyer." 22 NYCRR 1200, Rule 3.3(a)(1).

The decision in *Centauri Shipping Ltd.* is instructive on this issue.  In *Centauri Shipping*, the attorney for the plaintiff had submitted a false affirmation in support of an *ex parte* application for attachment, prompting the court to issue a *sua sponte* order to show cause why plaintiff's attorney should not be sanctioned under Rule 11. 528 F. Supp. 2d 197.  In analyzing the attorneys' conduct, the Court found that the attorney discovered his error on or about August 10, 2007 but "failed to take *any* steps to inform the Court that the Affirmation contained false statements until August 16, 2007." *Id*. at 202 (emphasis in original).  Further, upon disclosing the falsity of his affirmation, the attorney "sought to minimize the severity of his error and/or to explain it away as a harmless 'clerical error.'" *Id.*  The court rejected this excuse because "the purported harmlessness of Counsel's error 'is not a determination that [Counsel] is entitled to make.'" *Id.* at 203.  The court then concluded that sanctions were not warranted because, unlike Rule 11 proceedings brought on by motion, a subjective, bad faith standard applies to *sua sponte* Rule 11 sanctions proceedings and the court could not conclude that the attorney's actions were in bad faith.  However, importantly, the court also stated:

> [I]f the Court were to consider Counsel's conduct under the "objective reasonableness" standard, it would have likely found such conduct to be sanctionable. Specifically, the Court has serious doubts as to whether Counsel's actions could be deemed objectively reasonable where it is undisputed . . . that he failed to discern and to correct gross misstatements of material facts in the Affirmation, and then failed to inform the Court of his error for six days.

*Id.* at 203 n.6.

Here, as in *Centauri Shipping*, Plaintiffs' Counsel failed to comply with its professional obligations to disclose the falsity of the investigator's declarations upon purportedly learning of

23

the falsity of the declarations in July 2017.  Instead of promptly disclosing this information to the

Court, Plaintiffs' Counsel made a belated document production on July 27, 2017.  Plaintiffs'

Counsel then failed to inform the Court at the August 2 conference.  At that conference,

Plaintiffs' Counsel also minimized the importance of Ms. Quinonez, stating she "is not

necessary," when the facts ultimately revealed that she is the only available witness to the May

19, 2012 buy of an allegedly counterfeit watch.  Even when the falsity of the declarations was

revealed to the Court on September 4, 2017, Plaintiffs' Counsel sought to minimize their error.

Finally, unlike *Centauri Shipping*, an objective standard applies to this Motion.  Accordingly,

Rule 11 sanctions are warranted.

### C.    The Type and Amount of Sanctions Warranted Under Rule 11

Rule 11(c)(4) provides that a Rule 11 sanction may include, *inter alia*, "an order directing

payment to the movant of part or all of the reasonable attorney's fees and other expenses directly

resulting from the violation."  Here, a sanction for 375 Canal's fees and other expenses resulting

from the Rule 11 violation is warranted and necessary.  Given that Plaintiffs' false declarations

procured a summary judgment decision that was unwarranted based on the true facts, the

sanction should include 375 Canal's reasonable fees and costs incurred following the denial of

summary judgment.  Such fees and costs include, but are not limited to, the taking of Cole,

Stone, Yarborough, Leslie Quinonez, and William Quinonez's depositions; the preparation of the

letters to the Court concerning the falsity of the investigator declarations; and the fees incurred in

making the instant motion and in rearguing summary judgment.[12]

---

[12] Should the Court grant 375 Canal's motion for sanctions and award 375 Canal's reasonable
attorneys' fees and costs, 375 Canal will make a supplemental submission concerning its specific
fees and costs.

## CONCLUSION

For the foregoing reasons, 375 Canal respectfully requests that its Rule 11 motion be granted and that sanctions be imposed against Plaintiffs and Plaintiffs' Counsel, Collen IP and Joshua Paul, in the amount of the reasonable attorneys' fees incurred by 375 Canal following the Court's denial of summary judgment.[13]

Dated:  New York, New York
        October 3, 2017

                                    **DENTONS US LLP**

                                    By:   /s/ Avi Schick
                                         Avi Schick
                                         Kiran Patel
                                         avi.schick@dentons.com
                                         kiran.patel@dentons.com
                                         1221 Avenue of the Americas
                                         New York, New York  10020-1089
                                         (212) 768-6700
                                         (212) 768-6800
                                         *Attorneys for Defendant 375 Canal, LLC*

---

[13] 375 Canal also notes that "[t]he Court has the discretion to fashion an appropriate sanction for a Rule 11 violation." *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 667 (S.D.N.Y. 1997).  Indeed, in some instances, such as where a party falsifies sworn testimony, courts have dismissed actions pursuant to Rule 11, in conjunction with the Court's inherent powers.  *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) ("Dismissal is an appropriate sanction for falsifying a deposition. Fed. R. Civ. P. 11, as well as the court's inherent powers, can be called upon to redress such mendacity." (citations omitted)); *see also Brush v. Farber-Szekrenyi*, 487 F. App'x 418 (9th Cir. 2012).

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 3, 2017, I caused a true and complete copy of the foregoing Memorandum Of Law In Support Of Defendant 375 Canal, LLC's Motion For Sanctions Pursuant To Fed. R. Civ. P. 11(c), and the exhibits thereto, to be served (i) by ECF upon counsel for Plaintiffs, Collen IP, and (ii) by Federal Express upon counsel for Joshua Paul, Hal R. Lieberman, Esq., Emery Celli Brinckerhoff & Abady LLP, 600 Fifth Avenue, 10th Floor, New York, New York 10020.


_____/s/ Avi Schick_____
Avi Schick