UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

OMEGA SA and SWATCH SA,

                *Plaintiffs*,

   -against-

375 CANAL, LLC,
JOHN DOES 1 – 50 and
XYZ COMPANIES 1 – 50

                *Defendants*.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/13/18

12 Civ. 6979 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

In September 2012, Plaintiffs Omega SA and Swatch SA brought this action against Defendant 375 Canal, LLC. Following discovery, the Court denied Defendant's motion for summary judgment on Counts III and IV of the complaint on December 22, 2016. *Omega SA v. 375 Canal, LLC*, No. 12-cv-6979, 2016 WL 7439359 (S.D.N.Y. Dec. 22, 2016) (the "December 2016 Order"). On the day before the final pretrial conference, Defendant alerted the Court to falsehoods in a declaration by one of Plaintiff's witnesses that the Court relied upon in denying summary judgment. *See* Letter to the Court, Dkt. 141. As a result, the Court granted Defendant leave to move for reconsideration of summary judgment and for sanctions. Defendant has submitted a motion for reconsideration of summary judgment, a motion for sanctions pursuant to Federal Rule of Civil Procedure Rule 11, and a motion for sanctions pursuant to Rule 26(g) and the Court's inherent powers. For the reasons that follow, the motion for summary judgment on Count III and the motions for sanctions are **DENIED**. Summary judgment is **GRANTED** on Count IV.

## BACKGROUND

This case involves claims that Defendant knowingly rented space to a tenant that sold counterfeit watches. Count III of the complaint alleged contributory trademark infringement, and Count IV alleged a violation of New York Real Property Law Section 231(2). The Court assumes familiarity with the facts and law set forth in the December 2016 Order. There, Defendant argued that "there is no evidence that it continued to rent to anyone it knew was engaging in trademark infringement, so Plaintiffs' contributory trademark infringement claim fails," and also argued that "there is no evidence that it knowingly rented or permitted its property to be used for an unlawful purpose, and thus Plaintiffs' New York Real Property Law Section 231(2) claim must fail." *Omega SA*, 2016 WL 7439359, at *2. The Court rejected Defendant's arguments and held that a genuine dispute of material fact existed for each claim.

Specifically, when analyzing the third and fourth elements of Plaintiffs' contributory trademark infringement claim, the Court cited the sworn declaration of Bradford Cole, an investigator with the investigative firm Diogenes LLC, who was hired by Plaintiffs to attempt to purchase counterfeit watches at the premises owned by Defendant. On the third element—continued supply of service—the Court held that Plaintiffs' allegation that Defendant "continued to supply its premises to known infringers after receiving the September 28, 2011 notice . . . is supported by the fact that Plaintiffs' investigator purchased a counterfeit OMEGA watch from a store clerk at the premises on May 19, 2012." *Id.* at *3. On the fourth element—reasonable remedial steps—the Court held that, "despite these measures, which 375 Canal claims warrant summary judgment, there is some question as to their efficacy" because "[w]hen Plaintiffs' investigator visited the premises on May 19, 2012, '[t]here were no signs of any sort visible anywhere within or adjacent to the storefront' and a store clerk 'went into and then emerged

2

from a hidden storeroom or other hidden structure in the rear of the store carrying two counterfeit "Omega" Seamaster watches,' one of which the investigator purchased." *Id.* at *4. Hence, the Court denied Defendant's motion for summary judgment.

On August 1, 2017, Defendant informed the Court that Plaintiffs had made a belated production of documents, which included e-mails identifying two witnesses, William and Leslie Quiñonez, who participated in the investigation with Cole on May 19, 2012 and who were not previously identified by Plaintiffs. *See* Letter to Court, Dkt. 82. At conference on August 2, 2017, counsel for Plaintiffs explained the belated production:

> Now, last month, as we are beginning to prepare for trial, I sat down with all of the investigators in this case to go over piece by piece their testimony, their information, and we learned at that time -- this is last month -- that Mr. Cole, Diagonese, had subcontracted or involved three other persons in addition to himself in a number of the events that have been reported in the summary judgment affidavit and in the discovery we produced. We met with two of those three persons: Ms. Quiñones -- Mr. William Quiñones' daughter, we did not meet with. She is in Colorado, started a new job as a teacher. But we met with Mr. Quiñones and we met with the other gentleman, Luigi Porco. We got their e-mails with Mr. Cole and produced them immediately.

Aug. 2, 2017 Conf. Tr., Dkt. 113, at 9:2-15. As a result of the belated production, the Court allowed Defendant to depose William and Leslie Quiñonez. *Id.* at 5:6-8, 14:14-15.

Defendant deposed Leslie Quiñonez on August 19, 2017. L. Quiñonez Dep. Tr., Dkt. 183 Ex. 10. She testified that she, not Cole, entered 375 Canal and purchased the watch on May 19, 2012. *Id.* at 56:2-20. Defendant then deposed Cole on August 29, 2017. During his deposition, Cole confirmed that he did not personally take the actions described in his summary judgment declaration:

> Q. And is it accurate -- is it true and correct that you purchased, that you, Bradford Cole, purchased one of the watches . . . that day?
>
> A. No, it is not.

3

> Q. And is it true and correct that you, Bradford Cole, conversed with the store clerk on that day?
>
> A. No, it is not.

Cole Dep. Tr., Dkt. 141 Ex. B, at 26:20–27:2. On September 4, 2017, Defendant alerted the Court to this and other falsehoods in the declarations previously filed by Plaintiff in opposition to summary judgment, and Defendant requested that the Court revisit its summary judgment decision. Letter to the Court, Dkt. 141. At the final pretrial conference on September 5, 2017, the Court discussed this issue with counsel for both parties, granted Plaintiff an opportunity to respond to Defendant's arguments in writing, and scheduled an additional conference for September 11, 2017 to give the parties an opportunity to argue the issue.

At the September 11, 2017 conference, the Court expressed concern that Plaintiff's counsel, Joshua Paul, drafted the false declaration for Cole's signature, and that Mr. Paul did not timely disclose this falsehood to the Court upon learning from Cole, prior to the August 2, 2017 conference, that he did not personally purchase the watch. *See* Sept. 11, 2017 Conf. Tr., Dkt. 151, at 7:20–13:8. Mr. Paul requested an opportunity to address this issue in the context of a motion. *Id.* at 28:12-19. The Court instructed Defendant to submit a motion arguing why, "assuming that Mr. Cole submitted an inaccurate and false affidavit," it was entitled to summary judgment as a remedy. *Id.* at 31:6-15. The Court also informed Defendant that it would entertain motions to impose sanctions on Mr. Paul "because of his role in drafting these affidavits." *Id.* at 31:15-19.

On October 3, 2017, Defendant filed three motions: (1) a motion for summary judgment; (2) a motion for sanctions pursuant to Rule 11 against Plaintiffs, Mr. Paul, and Mr. Paul's law firm, Collen IP; and (3) a motion for sanctions pursuant to Rule 26(g) and the court's inherent powers against these three parties. Dkts. 155, 157, 159. The Court turns to these motions.

4

## DISCUSSION

### A. Summary Judgment

Defendant renews its motion for summary judgment dismissing Counts III and IV of Plaintiffs' complaint.[1] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "resolve[s] all ambiguities and draw[s] all reasonable inferences in the light most favorable to the nonmoving party." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013). Summary judgment is warranted where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015) (quotation omitted). On a motion for summary judgment, "[i]t is the movant's burden to show that no genuine factual dispute exists." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (citation omitted).

Rule 54(b) authorizes a court to revisit a decision denying summary judgment. *Official Comm. Of Unsecured Creditors of Color Title, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). Nevertheless, "those decisions may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Id.* (quotation omitted). A party moving for reconsideration based on newly discovered evidence must show that "(1) the proferred evidence was unavailable despite the exercise of due diligence by the movant in procuring evidentiary support, and (2) manifest injustice will result if the court opts not to reconsider its earlier decision." *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. 346, 350 (S.D.N.Y. 2004).

---

[1] Plaintiffs are no longer pursuing Counts I and II, which asserted direct trademark counterfeiting, trademark infringement and false designation of origin claims pursuant to 15 U.S.C. §§ 1114, 1125 against three "John Doe" defendants. *See* Pl's Opp. to Summ. J., Dkt. 181 at 3 n.3.

To the extent that Defendant suggests the "newly discovered evidence" is either the falsity of Cole's declaration or the role of Leslie Quiñonez, Defendant arguably fails to meet its burden to show that "the proferred evidence was unavailable despite the exercise of due diligence." Although Cole's declaration stated that he personally made the purchase, he attached a report which stated: "Investigators BC, WQ and LQ performed the undercover operation. Investigator LQ made each of the undercover purchases and obtained video and audio recordings of these purchases. Investigators BC & WQ observed each of these transactions from in front of the store." Dkt. 62-4 at 2. This report was disclosed to Defendant at the very beginning of discovery in September 2013 and again in December 2013. *See* Dkt. 183 Exs. 14, 18; Paul Decl. ¶ 19. Moreover, Defendant received video recordings in September 2013 showing Quiñonez's exchange with the store clerk from both inside and outside the store. *See* Dkt. 183 Exs. 14, 27-29. These recordings were also referenced in the report that Defendant received in December 2013. *See* Dkt. 62-4 at 5 ("Attachments #19 & #19a depict Clerk #5 inside the store and in discussion with Investigator LQ. Attachment #20 is a video and audio recording documenting the entire time inside 375."). And, although Defendant had the opportunity to depose Cole in 2014, it chose not to do so. *See* Cole Notice of Subpoena, Dkt. 183 Ex. 17. Hence, Defendant could have discovered Quiñonez's involvement before moving for summary judgment.

Nonetheless, Plaintiff's counsel bears responsibility for creating this situation by submitting the false declaration. The declaration itself was first submitted in opposition to summary judgment. Even if Defendant should have discovered Quiñonez's involvement earlier, it is understandable that Defendant did not notice the discrepancy between Cole's summary judgment declaration and his report before the Court ruled on the summary judgment motion. The Court is troubled by Plaintiff's counsel's role in submitting a false declaration that at least

obfuscated the involvement of Quiñonez. Accordingly, the Court assumes that the evidence was unavailable to Defendant.

Even if the evidence was unavailable, however, Defendant cannot establish that it is entitled to summary judgment, because it did not suffer manifest injustice. Specifically, the falsity of Cole's declaration and the involvement of Quiñonez would not have changed the outcome of the previous summary judgment ruling. *See JP Morgan Chase Bank, N.A. v. Reifler*, No. 11-cv-4016, 2013 WL 12177061, at *3 (S.D.N.Y. 2013) ("To establish manifest injustice, a movant must demonstrate that the new evidence is of such importance that it probably would have changed the outcome of the prior ruling." (quotation omitted)).

To replace Cole's false declaration, Plaintiff now has submitted a new declaration from Cole, as well as declarations from Leslie Quiñonez and Peter Foster, a Swatch Group Inc. executive. Dkts. 185, 143-1, 186. Defendant provides no compelling reason for disregarding these new declarations for purposes of ruling on the renewed motion. Defendant cites no authority for the proposition that, when a court discovers that a declaration it relied upon contains falsehoods, it must disregard both the false declaration and any new declarations when revisiting its decision to deny summary judgment.

Rather, the only argument that Defendant advances for disregarding the new declarations comes in its reply brief. There, it argues that after these issues came to light, the Court permitted the parties only to conduct new depositions and file the instant motions—not to introduce any new declarations. Def.'s Reply Br., Dkt. 196, at 4-5. The Court, however, did not direct that no new declarations would be considered. Moreover, it would make little sense to permit the parties to conduct new depositions but not to submit new declarations. Indeed, at the September 11, 2017 conference, the Court accepted that Leslie Quiñonez's affidavit "is now submitted." Sept.

7

11, 2017 Conf. Tr., Dkt. 151, at 21:9-11. Given that Defendant also deposed Cole and Foster, *see* Dkt. 183, Exs. 7–8, the Court sees no reason to disregard their declarations. In fact, disregarding these declarations and granting summary judgment as a result would effectively operate as a sanction on Plaintiff for the actions of its attorney, which would be inappropriate here, for reasons that will be further explained in the discussion of Rule 11 sanctions. *See Pichardo v. C.R. Bard, Inc.*, 563 Fed. App'x 58, 62 (2d Cir. 2014) (reversing grant of summary judgment as an improper sanction on plaintiff for the negligent actions of its attorney). Thus, the Court will consider the new declarations.

Upon considering the declarations, it is clear that the key fact prohibiting entry of summary judgment remains unchanged: a counterfeit Omega watch was purchased from 375 Canal on May 19, 2012. The only difference is that Quiñonez, rather than Cole, made the purchase. *See* L. Quiñonez Decl., Dkt. 143-1, ¶ 7; Cole Supp. Decl., Dkt. 185, ¶ 14. Defendant points out that Quiñonez could not independently verify that the watch she purchased was a counterfeit. *See* L. Quiñonez Dep. Tr., Dkt. 183 Ex. 10, at 54:6-55:7. For this purpose, however, Plaintiffs offer Foster's testimony. *See* Pl's Opp. to Summ. J., Dkt. 181 at 23. Foster states in his declaration that the watch pictured in Plaintiff's trial exhibits has numerous characteristics of a counterfeit. *See* Foster Decl. ¶ 4–27, Dkt. 186. Defendant contends that Foster has no way of knowing whether the watch he was shown was actually purchased at 375 Canal. *See* Foster Dep. Tr., Dkt. 183 Ex. 8, at 50:15-51:4. This is a chain-of-custody issue, which may be explored at trial but does not warrant disregarding Foster's testimony. *See United States v. Jackson*, 345 F.3d 59, 65 (2d Cir. 2003) ("Breaks in the chain of custody do not bear upon the admissibility of evidence, only the weight of the evidence . . . ."). Thus, Defendant fails to show that it is entitled to summary judgment on the basis of Cole's false declaration.

Despite the fact that the Court requested only an argument as to why Defendant is entitled to summary judgment because of Cole's false declaration, Defendant also devotes a large portion of its argument to explaining why it is entitled to summary judgment for other reasons. For example, Defendant argues that Plaintiff cannot show that Defendant had knowledge that counterfeit products were being sold because Plaintiff's witness Richard Taute testified that he could not recall personally witnessing the two arrests that allegedly occurred at 375 Canal in December 7, 2010 and February 10, 2011. *See* Def.'s Mot. Recons. Summ. J., Dkt. 155, at 9-10. This is not newly discovered evidence, however, as Taute's deposition was taken on February 4, 2014—well before Defendant moved for summary judgment the first time. *Id.* Ex. J. Moreover, the Court did not cite or rely on Taute's testimony in the December 2016 Order. In addition, although Taute could not recall if he witnessed the arrests, he maintained that there was "no doubt in [his] mind" that the arrests took place. *Id.* (Taute Dep. Tr. at 38:13-17; 45:14-21.) Thus, any weakness in Taute's testimony is not a reason to revisit the summary judgment ruling.

Defendant also argues that it is entitled to summary judgment based on false statements made by declarants other than Cole. For example, Plaintiff initially submitted a declaration from another investigator, Paul Stone-Jansen, who worked for another investigative firm, Robert Jackson & Associates, Inc. ("RJA"). *See* Dkt. 65 ¶ 1. He claimed that he purchased a counterfeit Swatch watch at 375 Canal on December 15, 2010. *Id.* ¶ 2. Defendant points out that this assertion is contradicted by Stone-Jansen's deposition testimony, taken on August 25, 2017, and by his own report attached to the declaration. *See* Def.'s Mot. Recons. Summ. J., Dkt. 155, at 5; Stone-Jansen Dep. Tr., *id.* Ex. D, at 66:4-67:7. Nevertheless, the Court did not cite or rely on this declaration in rendering the December 2016 order, and in any event, Plaintiffs now withdraw the declarations of Stone-Jansen and another investigator. *See* Pl's Opp. to Summ. J.,

9

Dkt. 181, at 1 n.1. Finding no merit in these miscellaneous arguments, the Court once again **DENIES** summary judgment on Count III, the contributory trademark infringement claim.

With regard to Count IV, however, summary judgment is appropriate. Defendant contends that Plaintiffs have abandoned this claim because a New York Real Property Law 231§ (2) claim requires proof of actual damages, and Plaintiffs conceded at the September 5, 2017 conference that they "are not able to show actual damages." Sept. 5, 2017 Conf. Tr., Dkt. 149, at 40:19-20. Plaintiffs do not respond to this argument in their opposition. Accordingly, summary judgment is **GRANTED** on Count IV, the New York Real Property Law claim.

### B. Rule 11 Sanctions

Under Rule 11, when an attorney submits a declaration to a court, she or he "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . the factual contentions have evidentiary support." *See* Fed. R. Civ. P. 11(b)(3). Sanctions under Rule 11 require a "showing of objective unreasonableness on the part of the attorney or client signing the papers." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (quotation omitted). "Because Rule 11 sanctions represent a drastic, extraordinary remedy, courts seldom issue them and then only as a (very) last resort." *Anderson News, LLC v. American Media, Inc.*, No. 09-cv-2227, 2013 WL 1746062, at *4 (S.D.N.Y. Apr. 23, 2013) (Crotty, J.) (quotation omitted). Defendant argues that Rule 11 sanctions are warranted for Mr. Paul, Collen IP, and Plaintiffs because Mr. Paul should have known that Cole's declaration contained falsehoods and because Mr. Paul failed to candidly disclose these falsehoods to the Court when he discovered them prior to the August 2, 2017 conference.

While the conduct at issue is serious, the Court recognizes that Mr. Paul and Collen IP

have already faced substantial repercussions. The law firm has lost a client, and the lawyer has had to leave the law firm. Surely these serious consequences have to be taken into consideration when determining whether sanctions are appropriate and, if so, what sanctions to impose. With regard to the preparation of the Cole declaration, it is clear that Mr. Paul should have known more about how Cole conducted the investigations. In fact, had Mr. Paul read Cole's report more closely, he may have realized that Leslie Quiñonez, and not Cole, personally purchased the watch. Nevertheless, the fact that Mr. Paul attached the report to Cole's declaration suggests that he did not intend to hide this fact. It is noteworthy that Defendant also failed to notice this discrepancy despite the fact that the report was attached to the declaration and the report and video evidence were produced at the beginning of discovery. The carelessness of both parties suggests that sanctions are not required here. Thus, the initial error, though careless, does not warrant sanctions.

More troubling to the Court is Mr. Paul's conduct after he learned in July 2017 that Cole's declaration was false. At that point, the Court had already ruled in favor of Plaintiffs on the motion for summary judgment and cited the Cole declaration several times in its December 2016 order. But Mr. Paul failed to immediately alert the Court to any errors. Rather, he disclosed this revelation only in response to Defendant's complaints of belated productions of documents at the August 2, 2017 conference. There, Mr. Paul explained that "we learned at that time -- this is last month -- that Mr. Cole, Diagonese, had subcontracted or involved three other persons in addition to himself in a number of the events that have been reported in the summary judgment affidavit and in the discovery we produced," and hence Mr. Paul had only recently "got their e-mails with Mr. Cole and produced them immediately." Aug. 2, 2017 Conf. Tr., Dkt. 113, at 9:5-15. Mr. Paul also resisted allowing Defendant to depose Quiñonez because she

"witnessed nothing that is not already captured on tape." *Id.* at 15:4-5. He elaborated:

> She was involved in I believe – I'm going from memory, but I believe this was true – in only one incident, which was a purchase of a counterfeit Omega watch at 375 Canal Street on May 19, 2012. Present with her at the time were three others: Mr. Cole, Mr. Quinones and a third person whom we have identified, Mr. Porko. Also Ms. Quinones recorded the whole thing on an iPad which we have produced and they have had; and the two other gentlemen, Mr. Cole and Mr. Quninones, observed the entire thing from the sidewalk and recorded it from the sidewalk. So, there can be no question what took place. We intend to offer into evidence clips from those videotapes. So, she is not necessary.

*Id.* at 15:5-16. Mr. Paul did not explain to the Court that this revelation rendered false the version of events relayed in Cole's declaration, which the Court relied upon in ruling on the summary judgment motion.

At the September 11, 2017 conference, after being confronted with the falsity of Cole's summary judgment declaration, Mr. Paul admitted that he recognized this issue prior to the August 2, 2017 conference and consciously chose not to make a more candid disclosure to the Court:

> Nonetheless, on the issue of disclosure, we were concerned, and we started asking questions. And we began to put together exactly what had happened. We consulted – I consulted, and I say my colleagues and I together, we looked at a particular opinion of the bar, city Bar Association, on the question of whether – we considered whether we had an obligation at that point to inform the Court. The Bar Association opinion talked about the issue of materiality, and we concluded then that – this is immediately before the August 2 conference – that the information was not material to the Court's decision . . . .

Sept. 11, 2017 Conf. Tr., Dkt. 151, at 7:23–8:8. This Bar Association opinion focuses on a lawyer's disclosure obligations under New York Rule of Professional Conduct 3.3(a):

> Rather than imposing a duty to remedy every possible falsity that might later be discovered after the close of a proceeding, Rule 3.3(a)(3) imposes a duty to act only when evidence that was "material" to the underlying proceeding is later discovered to be false. Determining whether the evidence is material is fact specific, depending on the factors relevant to the ruling in the particular matter, and particularly whether the evidence is a kind that could have changed the result.

Paul Decl. Ex. 26. at 2. Arguably, this opinion and the related rule did not apply to this situation because the "proceeding" was not closed. Assuming Mr. Paul reasonably believed that it did apply, this opinion apparently suggests to lawyers that they may decide for themselves whether or not information is material. Mr. Paul contends that his decision not to make a more candid disclosure was based on this aspect of the opinion. Rather than a supposed self-examination, Mr. Paul and Collen IP should have made a more candid disclosure. The Court expects more from counsel, who owe a duty of candor to the Court. Moreover, when a declaration is cited multiple times in an order, one should reasonably be able to assume that the declaration was material to the decision, and err on the side of disclosing any later-discovered falsehoods and explaining their significance or lack thereof to the Court. *See Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F. Supp. 2d 197, 201-03 (S.D.N.Y. 2007) (declining to impose sanctions but noting disapproval of lawyer's failure to correct false statements in affirmation because "the purported harmlessness of Counsel's error is not a determination that [Counsel] is entitled to make" (quotation marks omitted)).

Ultimately, however, the guiding principle for imposing sanctions is that "sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." *See* Rule 11 Advisory Committee Notes to 1993 Amendment. As a result of this incident, Plaintiffs have discharged Collen IP from representing them, and Collen IP has terminated Mr. Paul's employment. The Court notes that Mr. Paul has never been disciplined or sanctioned in his thirty-two years of practicing law. Paul Decl. ¶ 11. What happened here should be an object lesson to litigators about the care to be taken in preparing declarations and the obligation to disclose to the Court serious factual discrepancies in their submissions. In the unique factual circumstances of this

case, the Court does not believe that sanctions are necessary to deter comparable conduct in the future. Accordingly, although the Court finds Mr. Paul's actions a substantial departure from appropriate conduct, the Court declines to impose any Rule 11 sanctions on Mr. Paul or Collen IP.

Nor is it appropriate to impose sanctions on Plaintiffs for the actions of their counsel. Defendant argues that sanctions are warranted because Plaintiffs "have been on notice about the false declarations since presumably July" and have "never instructed their counsel to withdraw the false declarations." Def's Reply Br., Dkt. 197, at 19 n.11. Defendant also suggests that dismissal of Plaintiffs' claims would be a proper sanction. Def's Motion for Rule 11 Sanctions, Dkt. 157, at 25 n.13. But the cases that Defendant cites do not support dismissing Plaintiffs' claims as a sanction for the actions of Mr. Paul. In each case, the plaintiff's own actions were the basis for sanctions. *See, e.g., Combs v. Rockwell Intern. Corp.*, 927 F.2d 486, 488-89 (9th Cir. 1991) (affirming dismissal where client authorized counsel to falsify deposition and swore under penalty of perjury that he reviewed the transcript and personally made the changes). Indeed, "where a represented party either did not knowingly authorize or participate in the filing of a paper that violated Rule 11, sanctions against that party are not appropriate." *Calloway v. Marvel Entm't Grp., a Div. of Cadence Indus. Corp.*, 854 F.2d 1452, 1474 (2d Cir. 1988), *rev'd on other grounds sub nom, Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989). In light of the unique factual circumstances of this case, and the collateral consequences which have occurred, the motion for Rule 11 sanctions against Plaintiffs, Mr. Paul, and Collen IP is **DENIED**.[2]

---

[2] Because the Court concludes that sanctions are not warranted, the Court need not address the additional argument advanced by Mr. Paul, Collen IP, and Plaintiffs that Defendant's motion failed to comply with the procedural requirements of Rule 11.

## C. Sanctions Under Rule 26(g) and the Court's Inherent Powers

Rule 26(g) governs sanctions for improper disclosures and discovery responses. It requires that they be signed by an attorney of record and specifies that, "[b]y signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," a discovery response is "not interposed for any improper purpose" and an initial disclosure "is complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1). Where a certification violates Rule 26(g) "without substantial justification, the court, on motion or on its own, must impose an appropriate sanction" on the certifying attorney, the client, or both. Fed. R. Civ. P. 26(g)(3). In addition to Rule 26(g), a court may exercise its inherent power to sanction an attorney or party that has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (citation omitted).

Defendant's principal arguments in this motion do not relate to the false declarations. Indeed, because the false declarations are not initial disclosures or discovery responses, it would seem that Rule 26(g) is not applicable. Moreover, because the Court has already determined that, in the unique circumstances of this case, sanctions are not warranted for that conduct under the lower, "objectively unreasonable" standard of Rule 11, it cannot find "bad faith" warranting sanctions for this conduct under its inherent powers.

Defendant contends that, aside from the false declarations, Plaintiffs' counsel "has acted inappropriately throughout this action." Def's Motion for Rule 26 Sanctions, Dkt. 159, at 1. Specifically, Defendant argues that sanctions should be imposed because Plaintiff's counsel: (1) failed to disclose the existence of William and Leslie Quiñonez until well after the close of discovery; (2) withheld highly relevant documents requested in 2013 concerning the investigations that gave rise to this action; and (3) falsely claimed that they represented the

15

investigation firms that Plaintiffs retained, RJA and Diogenes, and directed Defendant not to contact those firms directly. *Id.* at 1, 12-13.

The Court declines to impose sanctions on any of these bases. First, Defendant fails to show that Mr. Paul knew that the initial disclosure of witnesses was incomplete or that Mr. Paul intentionally hid the existence of Leslie and William Quiñonez when responding to discovery requests. As Mr. Paul points out, Defendant's interrogatories sought the identity of "all of Plaintiffs' Agents retained" to investigate 375 Canal, and Plaintiffs disclosed that they retained two investigative firms: Diogenes and RJA. Def's Motion for Rule 26 Sanctions, Dkt. 159 Ex. C, at 4-5. But Defendant's interrogatory did not explicitly seek the names of the individual employees who worked for the two subcontractors. The Court cannot say that Mr. Paul and Collen IP did not have a "substantial justification" for failing to produce the names of the individual investigators. *See* Fed. R. Civ. P. 26(g)(3).

Second, Defendant fails to show that Mr. Paul and Collen IP's belated production of documents in July 2017 resulted from the lack of a "reasonable inquiry." *See* Fed. R. Civ. P. 26(g)(1). Collen IP searched for, located, and produced thousands of pages of documents from its own files and asked Diogenes and RJA to produce documents in response to Defendant's subpoenas in October 2013. Paul Decl. ¶ 16. In total, over 10,000 pages of documents and about 100 videos were produced. *Id.* Although Diogenes failed to produce certain documents in a timely manner, the Court cannot conclude that this failure is attributable to a lack of a "reasonable inquiry" by Collen IP or Mr. Paul. Rule 26(g) does not require perfection, only reasonable conduct under the circumstances.

Third, Defendant fails to show that Plaintiffs' counsel falsely claimed that they represented Diogenes and RJA when directing Defendant not to directly contact the firms. To

prove the falsity of this assertion, Defendant points to the deposition testimony of Cole and Tony Yarborough, an RJA investigator, where Cole and Yarborough were asked if they "retained" Collen IP to represent them. It appears, however, that the investigators understood the questions to ask whether they paid Collen IP to represent them or whether they signed any formal agreement, as opposed to Plaintiffs directing Collen IP to represent the firms in responding to discovery subpoenas. *See* Cole Dep. Tr., Leghorn Decl. Ex. A, at 5:17–6:18, 144:6–145:2; Yarborough Dep. Tr., Leghorn Decl. Ex. O, at 64:2–65:19. Contemporaneous e-mails show that Collen IP understood that it was representing the firms in this capacity. *See* Leghorn Decl. Ex. P. Hence, the Court cannot say that Plaintiff's counsel made false statements in this regard. Therefore, sanctions are not warranted under either Rule 26(g) or the Court's inherent powers, and Defendant's motion is **DENIED.**

## CONCLUSION

For the foregoing reasons, Defendant's motions for summary judgment on Count III and for sanctions are **DENIED**, but summary judgment is **GRANTED** on Count IV.

Dated: New York, New York
March 13, 2018

SO ORDERED

*/s/ Paul A. Crotty*
PAUL A. CROTTY
United States District Judge